CIRCUIT COURT FOR CLACKAMAS COUNTY, MARCH TERM, 1871.

## THE OREGON AND CALIFORNIA RAILROAD COMPANY *v.* WILLIAM BARLOW AND WIFE.

RIGHT OF WAY—ACTION TO CONDEMN LANDS—PRACTICE.—In an action to condemn lands to the use of a railroad company, when the issue is formed by a statement in the complaint that the defendant's damages do not exceed the sum of two hundred dollars, and a statement in the answer that the land sought to be appropriated is of the value of $234, and that the additional damages to the defendant resulting from such appropriation will amount to $2,516, the defendant was permitted to open and close the case.

ESTIMATE OF VALUE.—The amount to be paid for the land appropriated should be its value at the commencement of the action.

IDEM.—The estimate should not include the value of timber on the defendants' adjacent lands, cut down and destroyed by the plaintiff.

DANGER FROM FIRE.—If a railroad is to be constructed so near to the defendants' barns as to improperly expose them to danger from fire from passing trains, that is a proper subject to be considered by the jury in estimating damages. If the danger is such as to render it advisable to remove the barns, the cost of removal is a proper subject to be considered by the jury in estimating damages.

PONDING WATER.—If, by an improper construction of the railroad now built, the road bed acts as a dam and improperly ponds water and causes it to overflow the defendants' lands, their remedy is by a proceeding to prevent or remove the obstruction, and it is not a ground for additional damages in this proceeding. The damages to be assessed are such as will result from a proper construction of the road.

IDEM.—If a proper construction of the road will pond water upon the defendants' adjacent land, the overflow is a proper subject to be considered in estimating damages.

PROTEST.—Money paid into court by the plaintiff to enable the court to render judgment in pursuance of the verdict, was, on motion, ordered paid to the defendant, notwithstanding it is accompanied by a protest.

THIS was a proceeding under the statute to condemn and appropriate a parcel of the defendants' land for the use of the plaintiff's railroad.

The complaint describes this parcel of 4 69-100 acres of land, sixty feet in width, by metes and bounds, and "as lands of the defendants;" the initial of the boundary being designated as a point "on the northern boundary of the defendants' land claim." Other than this the pleadings do not show what land is owned by the defendants.

The complaint states that, believing that two hundred dollars was sufficient to compensate the defendants for the land and all damages, etc., the plaintiff had tendered that amount, etc., making a formal plea of tender.

The answer averred that the true value of the 4 69-100 acres of land was $234, and that if said land was taken and appropriated, the said defendants would be thereby damaged in the sum of $2,516, in addition to the value of the land taken.

The plaintiff moved that the defendants be required to make their answer more specific, by stating in what manner the appropriation of land would cause them damage.

*Mitchell & Dolph,* for the plaintiff.

*Johnson & McCown* and *Charles Warren,* for the defendants.

UPTON, J., overruled the motion, and the plaintiff replied denying that the parcel of land was worth more than $200, and denying that the construction of the road would cause damage to the defendants; and alleging that it would cause benefits to the defendants greater than the damages claimed by them.

The cause coming on for trial, the defendants claimed the affirmative of the issues, and asked to be allowed to open and close the case. This was granted, the plaintiff objecting.

The jury viewed the premises.

On the trial the defendant asked his witness the following questions:

What was the value of the strip of land described in the complaint *at the time this action was commenced?*

The plaintiff objected that it was irrelevant, immaterial and incompetent, and claimed that the question should be confined to the value at the time the plaintiff took possession of or appropriated the land, and the estimate should be irrespective of any increased value by reason of the proposed improvement.

*It was held,* that the witness may be asked what it was worth at the commencement of this proceeding. (1)

---

(1) A corporation, named the Oregon Central Railroad Company, had commenced the construction of this line of road and had transferred the road to the plaintiff. The road had been constructed over this land more than a year previous to the commencement of this action; and when this question arose, it was in evidence, that the road had been constructed, but it was not shown who constructed it, nor that any transfer had been made.

The defendant testified that he had two rows of black walnut trees along the margins of an avenue leading from his house, and that six of those trees were grown on the sixty feet sought to be appropriated.

His counsel asked of him, what were those six trees worth?

To this question the plaintiff objected. That the witness had already given his opinion of the value of the land at an amount higher than that claimed in the answer, and that the trees being part and parcel of the land sought to be appropriated, it was not competent for the witness to give an estimate of the value of the trees separately.

*It was held,* that estimating the value of the trees was one mode of coming at the value of the land including the trees. That there is no rule preventing a witness from testifying to a higher value than that claimed in the pleading, although the jury are limited to that amount in rendering their verdict.

The witness was permitted to answer, and said the trees were worth from $50 to $100 each.    (1)

The defendant proved that he had two farm barns standing one hundred and seventy-eight feet from the centre of the railroad track, and that the barnyard in which they stood extended to within eighty-nine feet of the track. The defendant offered evidence tending to prove that the barns were in danger of being burned by passing locomotives. To this evidence the plaintiff objected, that the probable or possible damage was too remote; that it was only a possibility; and that if the plaintiff caused the destruction of the defendant's barns by fire, the plaintiff would be liable in an action for damages.

It was argued by the defendants' counsel, that although the defendants might recover in a future action if they were guilty of no contributory negligence, yet if they continued to use the barns as heretofore, if there was danger, the dan-

---

(1)  It was virtually conceded by the defendant's counsel, before the close of the trial, that as the walnut trees were destroyed before the commencement of this action, a separate action would lie for destroying the trees, and that he was not entitled to recover their value in this action; and the evidence on that subject was subsequently ruled out with the defendant's consent.

ger would be such that it would be clearly a case of contributory negligence, and if the defendants were compelled to remove their barns, or change their mode of using them, that was a reason for claiming damages in this proceeding.

The objection was overruled. The defendant introduced evidence tending to prove that the danger was so great as to render it advisable to remove the barns. The defendant then asked a witness the cost of removing the barns. The plaintiff objected, on the grounds before stated.

The objection was overruled.

The evidence tended to show that a few acres of the defendants' land being level and nearly or quite surrounded by higher lands, and having no distinct channel through it, was, before the construction of the railroad, in extremely wet weather, covered with water for a few days at a time. That the railroad was constructed across and over the center of this part without a sluice to allow the water to pass under the road, and the road-bed operated as a dam, causing the water to stand higher on the east than on the west side of the railroad, and to stand for a much longer time than formerly on a portion of defendant's land. There was conflicting evidence as to where, and in what direction, was the natural surface flow or drainage of this water, before the construction of the railroad; and as to the proper mode of relieving the land of surplus water after the construction. The cost of drainage by a ditch parallel to the railroad was variously estimated; the opinions of witnesses ranging from $10 to $180. The cost of a good sluice under the railroad was estimated to be $75.

The plaintiff moved that all the evidence on the subject of the overflow be ruled out as irrelevant.

The motion was overruled.

Of the written instructions presented by the plaintiff, the court *declined* to give the following:

"The defendants cannot recover anything in this case by reason of any probable danger of fire to the barns of the defendant situated on adjacent lands outside the sixty feet sought to be appropriated.

"The defendants are not entitled to recover for any damage done to adjacent lands of defendants, outside of the

sixty feet sought to be appropriated, by reason of water dammed back on such lands by the embankment of the railroad.

"In determining the compensation to which the defendants are entitled for the strip of land actually sought to be appropriated, you should find what that strip of land was worth *at the time the plaintiffs took it*, and irrespective of any increased value by reason of the railroad."

The following are the instructions given to the jury:

It will be proper for you to observe a distinction between what is claimed by the defendants as the value of the land which the plaintiff seeks to appropriate, and what is called resulting damages. The defendants are entitled to compensation for the parcel or strip of $4\frac{69}{100}$ acres irrespective of any benefit or advantage to their adjacent lands caused by the proposed improvement or by the construction of the railroad.

But the question whether the defendants are entitled to recover any more than the actual value of the $4\frac{69}{100}$ acres depends upon whether there are resulting damages, aside from this value, exceeding resulting advantages or benefits to the defendants, in consequence of the road.

The plaintiff admits the value of the land described in the complaint to be $200, and the defendant claims that it is worth $234; of course you cannot place its value at less than $200, nor more than $234.

In estimating its value you will find what it was worth at the time this proceeding was commenced.

If you believe from the evidence that the defendant's barns are so situated as to be unreasonably exposed to danger of fire from passing locomotives, that is a proper subject for you to consider in determining whether the resulting damages are greater than the benefits.

If you think they are in such danger that it would be advisable to remove them from their present position, the cost of such removal is a proper subject for consideration in making your estimates.

The defendant cannot recover in this action any damages or compensation for walnut trees. All evidence on that subject has been ruled out, and the subject has been with-

drawn from your consideration. It has been ruled out because, as to the land sought to be appropriated, you are to find its value at the time this action was commenced, and not at the time the plaintiff took possession. Such growing trees are a part of the land, and if they were to be valued at all in the case, they would be valued as land, and it is admitted that when this proceeding was commenced the walnut trees were not in existence. If the defendant has an unsatisfied demand for taking those trees, he must recover, if at all, in another action; for, if we should attempt to include that matter in this case, the judgment in this case would be no bar to another action for the same thing; and you are to treat the case as if there had been no such walnut trees.

If the plaintiff has neglected to put in a sluice, where one was needed to prevent the plaintiff's work from causing an overflow of the defendants' land, the defendants' remedy is by a proceeding to compel the plaintiff to put in the necessary sluice; and if such is the cause of the alleged overflow, the defendants cannot recover any damages in this proceeding because of such neglect. The damages to be considered in this case are such as will be caused by constructing a railroad in a proper manner. If the railroad now built is improperly constructed, and an overflow is caused by improperly neglecting to put in a sluice by which the plaintiff ought to have avoided such overflow, the damage thus caused can not be considered in this case, but the defendants' remedy must be by proceedings to compel the plaintiff to put in the sluices.

If you think some injury is done to the defendants by ponding water upon their land adjacent to the sixty feet, and that a sluice is not necessary, such injury is a proper subject to be considered in estimating damages. In other words, if a proper construction of the road will pond water upon the defendants' adjacent land, the overflow is a proper subject to be considered in estimating damages.

The court has refused to admit evidence that the plaintiffs while constructing the road, cut down or destroyed timber growing on lands adjacent to the sixty feet sought to be appropriated, and you should not permit anything that has

been said on that subject to influence your verdict. If the defendants have suffered any injury in that respect, the law affords them a remedy in another proceeding, and the nature of this case is such that no record can be legally made to show that such damages have been considered and determined in this proceeding.

The opinions of experts or persons skilled in a particular branch of business have been given in evidence, to aid you in arriving at correct conclusions on some points with which they may be more familiar than you can be.

In determining any controverted question of this kind, you will give to their opinions such consideration as is proper, remembering that such opinions are not offered to control your judgment, but to instruct and to convince, and thus enable you to arrive at the truth. In the end, it is the opinion of the jury, upon which the determination of the point is to rest. After carefully considering these opinions with all other evidence, and giving them due weight, it rests upon you to decide according to your convictions·

The jury returned a verdict in favor of the plaintiff for the appropriation of the land described in the complaint, and in favor of the defendants for $700 damages.

The plaintiff filed a motion for a new trial, assigning errors of law and insufficiency of the evidence, which was submitted without argument, and overruled.

The plaintiff paid into the hands of the clerk $700, together with money sufficient to satisfy the costs, and at the same time filed a paper stating that the plaintiff pays the same "under protest and without waiving the right to appeal from the judgment rendered, or to be rendered, herein," and also notifying the clerk not to pay the money to the defendant until the case was determined on appeal.

A judgment was rendered, on the plaintiff's motion, in accordance with the verdict. Afterwards the defendants' attorney filed an affidavit stating that he had demanded the said $700 of the clerk, and that the clerk refused to pay the same to the defendants, and moved the court for an order on the clerk, directing him to deliver that sum to the defendants ; and the question having been argued and submitted, it was ordered that the clerk pay the $700 to the defendants.