# CASES

## ARGUED AND DETERMINED

### IN THE

# Supreme Court of South Dakota.

---

## FAULK v. MISSOURI RIVER & N. W. RY. CO. et. al.

Under Const. art. 6, § 13, providing that public property shall not be taken for public use or damaged without just compensation paid before possession is taken, where a railroad company takes possession of land for a right of way without payment of compensation, the owner's right to compensation is not barred by 6 or 10 years limitation, but only by adverse possession for 20 years.

Where the entry by a railway company on land for a right of way was without the consent and against the protest of the owner, and the entry by the company's successor was not induced by any act of the owner, whose title was of record, his right of action for compensation is not barred by laches within the prescriptive period of 20 years.

Where a railway company entered on land for a right of way without payment of compensation, the owner in an action for such compensation is entitled to have a lien therefor adjudged against the property of the railway company superior to all other claims against the company.

Where a railway company enters on land for a right of way without payment of compensation, its successor is no more entitled to occupy and use the premises without paying therefor than the railway company.

In an action by an owner of land against a railway company for compensation for land taken for a right of way without his consent, the value of the land is to be estimated as of the date of commencing the action, or at the time of the trial, and not as of the date of the original appropriation.

Whiting, J., dissenting in part.

(Opinion filed June 30, 1911.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Samuel Faulk against the Missouri River & Northwestern Railway Company and others. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Affirmed.

*C. W. Brown, C. L. Wood, Bailey & Voorhees,* and *McLaughlin & Ogden,* for appellants.

As soon as the right was appropriated the liability of the railroad company to compensate plaintiff for the consequential damages resulting to his property became fixed|and the statute of limtiations, whatever it may be, commenced to run * * * * And that would be so. if there were an actual taking of property instead of a mere invasion of the right or privilege. Strippen v. Midland Ry. Co., 25 N. E. 455; Porter v. Midland Ry. Co., 25 N. E. 556; Bravard v. Ry. Co., 17 N. E. 183; Smith v. Concord, 9 N. E. 642; Brock v. Old Colony Railroad Co., 15 N. E. 555; Frankle v. Johnson, 30 Fed. 398; C. & N. W. Ry. Co. v. McEarly, 11 N. E. 67; Kuhl v. C. & N. W. Ry. Co., 77 N. W. 155. Courts of equity will only grant relief in cases in which the application therefor is made promptly and without unreasonable delay whatever may be the merits of the controversy. Great Western Mining Co. v. Woodmas, Alston & Co., 33 Pac. 908; Graft v. Portland Town &, Mineral Co., 54 Pac. 857; St. Paul S. & T. F. R. R. Co. v. Sage, 49 Fed. 315; Abrams v. State, 83 Pac. 327; Hurley v. Riley, 95 Pac. 686. The fundamental doctrine that private property cannot be taken for public use without just compensation requires that the owner shall receive the market value of his property at the time of the taking. 15 Cyc, 719; 10 A. & E. Ency. Law 2nd Ed. 1147. Note 1. The implied vendor's lien does not operate like a judgment against the entire property of the debtor, but only against the particular land for whose purchase price it is invoked. 29 Am. & Eng. Enc. Law 2nd Ed. 748.

*Schrader & Lewis* for respondent.

When a new railroad company succeeds to the rights and property of an older company, enters upon land, appropriated by its predecessor for which no payment has been made, and uses the same for railroad purposes to the exclusion of the

owner it will be deemed to have adopted the original appropria-
tion and an implied promise to pay the same arises upon which
an action may be maintained. Lewis Eminent Domain, 2d Edi-
tion P. 1328-9. Railway Company v. Griffen 107 Ind. 464; New
York R. R. Co. v. Hammond 132 Ind. 475; Pfeifer v. Sheboygan
& Fon Du Lac R. R. Co. 18 Wis. 155; Western Penna R. R. Co.
v. Johnston 59 Pa. St. 290; B. N. & P. R. R. Co. v. Harvey 107
Pa. St. 319; Organ v. Memphis R. R. Co. 11 S. W. 96; Kansas
City R. R. Co. v. Fisher, 53 Kans. 512; New York R R. Co. v.
Stanley Heirs 35 N. J. Eq. 283; Hendricks C. C. R. R. Co. (N.
C.) 8 S. E. 236; Rio Grande R. R. Co. v. Ortig, 12 S. W. 1129.
Where under the State constitution like that of South Dakota, com-
pensation must be first made before property can be taken for
public use, the owner's right to compensation is not barred ex-
cept by *adverse possession* for twenty years. Lewis Eminent Do-
main, 2d Edition, page 1477 Sec. 665 b; Leigh Valley R. R. Co.
v. McFarlan, 43 N. J. L. 605; McFarlan v. Morris C. N. B. Co.,
44 N. J. L. 471; Searles v. City of Lead, 10 S D. 321; Organ v.
Memphis R. R. Co. 11 S. W. 96; Levee Coms. v. Dancy 65, Miss.
335, 3 So. 568; In Re Water Coms. 148 N. Y. I.

Where property was wrongfully entered upon by a Railroad
Company and years after the owner instituted proceedings for
damages which the company converted into condemnation proceed-
ings, it was held that the damages should be estimated as of the
time of trial. County of Blue Earth v. St. Paul R. R. Co., 28
Minn. 503; Morin v. St. Paul R. R. Co., 30 Minn. 100; Lyon v.
Green Bay & Minn. R. R. Co., 42 Wis. 538; Chicago R. R. Co.
v. Randolph T. S. Co. 103 Mo. 451 15 S. W. 437; Doyle v. Kan-
sas City R. R. Co. 20 S. W. 970; Pittsburg and W. R. R. Co. v.
Perkins 49 O. Stat. 326; Graham v. Pittsburg R. R. Co. 145 Pa.
St. 504; Texas W. R. R. Co. v. Cave, Tex. 15 S. W. 786; Louis-
ville R. R. Co. v. Hopson Miss. 19 A. 718.

CORSON J. This is an appeal by the defendants from a
judgment entered in favor of the plaintiff and from the order
denying a new trial.

It is alleged in the plaintiff's complaint that ever since the 2d

day of September, 1890, he has been and still is the owner of a
40-acre tract of land situated in Pennington county, in this state;
that the said defendant railway company' was duly organized and
is now existing under and by virtue of the laws of the state of
South Dakota, and is the owner of and maintains and operates
that certain line of railroad running from Rapid City, in said
Pennington county, in a general southwesterly direction along the
valley of Rapid creek, to Mystic, in said county, a distance of
about 33 miles, and over and across said land; that as such cor-
poration the said railway company is vested with the right to take
or damage the said land of the plaintiff, together with the ap-
purtenances thereto, and to construct and maintain its railroad
thereon, and to operate the same under the laws of this state,
upon first ascertaining and paying just compensation to plaintiff
therefore, before possession thereof is taken or any injury or dam-
age done; and that, to enable defendant corporation to construct,
operate, and maintain said railroad over the land of the plain-
tiff, it is necessary that the railway company and receiver acquire
a right of way therefor over the premises of plaintiff; that the
defendant Charles O. Bailey is the receiver of the said railway
company, duly appointed by the circuit court of Pennington coun-
ty, and is now in possession as such receiver of all the property
of said railway company.

Plaintiff further alleges that the said defendant the Cleveland
Trust Company is a corporation duly organized and existing un-
der and by virtue of the laws of the state of Ohio, and as such
corporation is a trustee for all the bondholders of the several bonds
issued by said railway company, aggregating about $1.000,000,
secured by a pretended mortgage upon all of the property of the
said railway company for the purpose of constructing and equip-
ping the said railroad; that the said trust company claims a lien,
interest, or estate in said railway company and its property as se-
curity for the bonds mentioned, but plaintiff alleges that what-
ever interest, lien, or estate said trust company may have the same
is subject to and inferior to the claim of plaintiff herein; that dur-
ing the years 1891-92, the said railway company and its predeces-

sors·in interest located and constructed its said railroad from Rapid City to Mystic, over and across the said land of plaintiff, and have occupied and still occupy a strip of land 100 feet wide and 1,380 feet in length, cutting said land in two and destroying a large amount of meadow and plowland, and also destroying and filling up a ditch of plaintiff's; that ever since the construction of said roadbed over the said premises of plaintiff the said railway company and its predecessors in interest, and its said receiver, have operated said railroad over and across said premises and occupied the said strip of land therefor, without right and without payment therefor,.and have never acquired any title thereto, and neglect and delay so to do; and, though often demanded to do so, they have refused to pay this plaintiff any damages therefor, and have refused to commence and prosecute condemnation proceedings, whereby this plaintiff has been damaged in the sum of $500, no part of which has been paid or deposited in the office of the clerk of the court, or, elsewhere. Wherefore plaintiff prays for an order fixing the time and place for hearing of this complaint and requiring the said railway company and its receiver to commence and prosecute with all speed in this court, by a day, to be named, before a jury, legal proceedings under the law of eminent domain, to ascertain the damages of the plaintiff for the taking and injury of the premises of the plaintiff as aforesaid.

Plaintiff further prays that upon the final hearing of this action judgment may be rendered in favor of the plaintiff and against the defendant railway company and its receiver for the said sum of $500, and that the judgment of this plaintiff may be declared to be a first lien on said railroad and its appurtenances, prior and superior to the claims of said defendants, and each of them.

To this complaint the trust company separately answered, and denied all the allegations of the complaint, except such as were thereinafter specifically admitted; admits that the railway company is a corporation organized under the laws of the state of South Dakota, and the owner of the railroad described in plaintiff's complaint; that C. O. Bailey is receiver of said railroad, and

as such is in possession thereof and maintains and operates the same; and that said railway company is vested with the right of eminent domain. The trust company then proceeds to set out its incorporation under the laws of the state of Ohio, and as such is trustee for all the bondholders of said railroad, aggregating about $1,000,000, which bonds are secured on all the property of the said railway company, and which were issued for the purpose of constructing and equipping the same; asserts that the defendant has a lien upon, interest and estate in, all of said property as security for the bonds mentioned; that during the years 1891-92 the predecessor of said railway company located and constructed said railroad from Rapid City to, upon and across the land described in the complaint, and for a number of years thereafter occupied the strip of land for a right of way, as described in the complaint.

The defendant then pleads the six and ten year statutes of limitations as a defense to the action. It is then alleged in the answer that the defendant corporation was chartered as such on the 15th day of April, 1904, and has since been such corporation; that the Dakota, Wyoming & Missouri River Railway Company was, prior to the year 1890, duly organized and existing as a railroad corporation under the laws of the state of South Dakota, and continued to be such corporation for many years thereafter; that said railroad was graded and constructed over and across the land described in the complaint, with the consent and acquiescence of the plaintiff, in the year 1891, and more than 16 years prior to the commencement of this action, and that said railroad was for many years thereafter maintained and operated by said Dakota, Wyoming & Missouri River Railway Company; that thereafter, and before this action was commenced, the defendant railway company succeeded to and became the owner of all the right, title, and interest formerly owned and possessed by the former railway company, and that said defendant railway company relied upon said plaintiff's long-continued consent to, and acquiescence in, the claim of said former company to have a valid right of way, over and across said land, and after its purchase of said railroad

and appurtenances this defendant expended over $700,000 to complete and equip the same, and but for such acquiescence and reliance would never have purchased the said railroad or made the said· expenditure; that the plaintiff slept upon his rights, if he has any, more than 16 years before this action and never, until this action, brought any suit or other proceedings to obtain damages for said right of way used and operated as aforesaid, or for other relief; and the plaintiff's said claim is a stale demand without standing in a court of law or equity; and that by reason of the premises the plaintiff is barred by laches, and by the statute of limitations, and is also estopped to claim or assert any estate, right, title, or interest whatsoever in or to, or lien upon, said land aforesaid adverse to the defendants, or to assert any claim for damages against them or either of them.

It is then alleged in the answer that the plaintiff claims some estate or interest in and to said parcel of land, but that he has not any estate, right, title, or interest whatsoever in and to the same, or any part thereof, and demands judgment that its title to the said premises he quieted.

The defendant Missouri River & Northwestern Railway company and Charles O. Bailey also filed separate answers, and pleaded substantially the defenses set up in the answer of the trust company. To these answers the plaintiff replied, denying many of the allegations therein contained, and denied that the said claim of the defendant is prior and superior to the claim of plaintiff.

This action was commenced in July, 1908, and on the 9th day of March, 1909, came on for trial before the court, and again came on for trial before the court and a jury on the 4th day of November, 1909. The jury returned a verdict for $485, and the court made its findings and conclusions of law, in which the court finds, in substance, the facts as alleged in the plaintiff's complaint, and, among others, that the plaintiff has a first lien upon the said railroad as described in the complaint, together with its right of way, appurtenances, and franchises, prior and superior to the claims and demands of the defendants, and each of them, for the said sum of $485, found by the jury; that the defendants the Cleveland

Trust Company and the Missouri River & Northwestern Railway Company have an estate, lien, and interest in said railroad, appurtenances, and franchises, but that such lien and interest is subject to and inferior to the claim of plaintiff; that Charles O. Bailey is the duly appointed and acting receiver of said defendant railway company, and is now maintaining and operating the same; but that his estate possession, and interest therein is subject to and inferior to the claim and lien of the plaintiff; that this action was duly commenced by the issuance of a summons and complaint on the 30th day of July, 1908, and is not barred by the statute of limitations; that during the month of April, 1904, the said defendant the Missouri River & Northwestern Railway Company became the owner of all the estate and interest of its predecessor, the Dakota, Wyoming & Missouri River Railway Company, in and to said railroad and appurtenances, and ever since that time has, together with Verne Crouch, an intermediate receiver, and the defendant Charles O. Bailey, the present receiver thereof, without right or the consent or acquiesence of plaintiff, continually occupied said premises of plaintiff, and has maintained and operated said railroad over and across the same; but, though often demanded, has refused to commence condemnation proceedings to acquire the right of way over the same, or pay plaintiff any damages therefor.

And the court concludes that the plaintiff is entitled to a judgment against the defendant railway company and Charles O. Bailey as receiver, for the said sum of $485 and costs, and that said judgment should be declared to be a first lien upon said railroad right of way, appurtenances, and franchises, prior and superior to the interest, lien or claim of each and all of the defendants herein, and all persons claiming through them, and that the said premises be adjudged to be sold in the manner provided by law, and out of the proceeds of sale the plaintiff be paid the said sum recovered, with interest and accrued costs, and judgment was thereupon entered accordingly.

Numerous errors are assigned, but for convenience the counsel have grouped them under the following heads: (1) Those to

which appellants contend the statute of limitations apply: (2) plaintiff's laches; (3) errors as to the measure of damages; (4) errors as to priority of plaintiff's lien.

[1] It is contended by the appellants that plaintiff's cause of action accrued in 1891 or 1892, when the appropriation of the right of way was made by the Dakota, Wyoming & Missouri River Railway Company, and was therefore barred by the six-year statute of limitations. It is contended by the respondent, however, that where, under a state Constitution like that of South Dakota, compensation must be first made before property can be taken for public use, the owner's right to compensation is not barred, except by adverse possession for 20 years.

We are inclined to take the view that the respondent is right in his contention. It is provided by section 13, art. 6, of our state Constitution, that "Private property shall not be taken for public use, or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained and before possession is taken. * * *" This provision of the Constitution was designed, and its effect is, to prevent the taking of private property for public use, until the damages occasioned thereby shall be ascertained and paid to the owner of the property, and a party cannot be deprived of that protection by statutes of limitation within the period of prescription for the recovery of property, by ejectment, or, as held by the Supreme Court of Pennsylvania, until the law presumes that the compensation has been paid to the owner, which is at the expiration of 20 years. And it has been recently held by the Supreme Court of Nebraska that a statute imposing limitation is unconstitutional. Kime v. Cass County, 71 Neb. 67. 99 N. W. 546, 101 N. W. 2. And the same view was taken by the Supreme Court of Mississippi in Levee Com'rs v. Dancy, 65 Miss. 335, 3 South, 568.

Mr. Lewis, in his work on Eminent Domain (3d Ed.) § 967, under the head of limitations, when property is appropriated without complying with the law, says: "We have seen that where property is entered upon and appropriated to public use, without complying with the law, the owner may waive the tort and sue

for his just compensation. The same rule applies where the entry is by consent and the questions of compensation is left for future adjustment. In such cases the action for just compensation is not barred, except by adverse possession for the requisite period to establish a title "by prescription"—citing Lehigh Valley R. R. Co. v. McFarlan, 43 N. J. Law, 605; McFarlan v. Morris Canal & Banking Co., 44 N. J. Law, 471.

And in Pennsylvania, where the Constitution requires compensation to be first made or secured, it is held that the right to compensation is not barred by any length of time, but that after 20 years there is a presumption of payment, as in cases of all obligations for the payment of money, which must be overcome by proof. Carter v. Ridge Turnpike Co., 208 Pa. 565, 57 Atl. 988; Stauffer v. East Stroudsburg, 215 Pa. 143, 64 Atl. 411; Connellsville Gas Coal Co. v. Baltimore, etc., R. R. Co., 216 Pa. 309, 65 Atl. 669; Keller v. H. P. R. R. Co., 151 Pa. 67, 25 Atl. 84,

In the case of Carter v. Ridge Turnpike Co., supra, the learned Supreme Court of Pennsylvania, in discussing the question of limitations in such an action says: "If the land was taken under the right of eminent domain, as contended by appellants, and they are, under the authority of Oliver v. Pittsburg, etc., Railway Co., 131 Pa. 408, 19 Atl. 47; the proper parties to bring this suit, there can be no question about their right to recover the damages sustained, if the same have not been paid, for no statute of limitations can bar their constitutional right to actual compensation for the land so taken from their ancestor"—citing a number of Pennsylvania cases.

The Court of Appeals of New York, in the matter of Clark v. Water Commissioners, 148 N. Y. 1, 42 N. E. 414, takes the same view, and holds that their statute of limitations does not apply to that class of cases. It was contended in that case that the 6-year statute of limitations was applicable, and, if not, then the 10-year statute of limitations was applicable. The court, in discussing the last question, says: "The only other section which might be applicable is section 388, which provides that an action, the limitation of which is not specially prescribed in this or the

last title, must be commenced within 10 years after the action accrues. The answer to that provision lies in the fact that the proceedings here were commenced before the expiration of the 10 years provided for therein,"

It is contended by the appellant that by this clause in the opinion the court held that the 10-year statute of limitations was applicable, but we do not so understand the language used as being a decision upon that point. It will be noticed that the language is, "the only other section which *might* be applicable," but they dispose of the question by stating that the 10 years had not expired in that case; and hence, in effect, it was not necessary to pass upon that question.

While there seems to be some conflict in the decisions, we are of the opinion that the views expressed by the Supreme Courts of Pennsylvania, New Jersey, New York, Nebraska, Mississippi, and the learned author on the subject of Eminent Domain, before referred to, state the true and correct rule, for as was said by the Supreme Court of Nebraska, in Kime v. Cass County, supra, if it was competent for the Legislature to make any provisions limiting the time for commencing an action by the owner, it could make such provisions as would effectually abrogate or fritter away the guaranty of the Constitution. The trial court was, therefore, clearly right in holding that plaintiff's action was not barred by the statute of limitations, as the prescriptive period of 20 years had not elapsed.

[2] It is next contended by the appellant that plaintiff has lost the right to maintain this action by reason of his laches in failing, for the period of 16 years, to bring his action to recover for the value of the property taken and appropriated by the railway company, but, under the decisions of the court there seems to be no merit in this contention. It is not claimed that the plaintiff did not act or made any statement in regard to his property that would estop him from maintaining this action. It clearly appears that the entry upon his premises by the first company was without his consent and against his protest, and that the entry of the present defendant corporation was not induced by any act

of his. His title was of record, and the defendant railway company was bound to know that it had not acquired the title of the plaintiff, and consequently that the plaintiff had not been paid the value of the same. Mere delay, short of the statute of limitations, will not estop a party from asserting his right to the property, unless he has been guilty of some act, declaration, or statement that has, in some manner, misled the other party to his prejudice. Not being barred, therefore by the statute of limitations, other than the prescriptive statute of 20 years, the plaintiff was not required to proceed to recover possession of his property, or to enforce his claim by what is denominated by the Supreme Court of Pennsylvania in the nature of an equitable ejectment; he cannot be deprived of his property by reason of his failure to institute his suit at an earlier date. The defendant railway company and its predecessors in interest could, at any time during the 16 years, have instituted proceedings to condemn the right of way, but failing to take any action in the premises, the defendants cannot now be heard to complain that the plaintiff, who was not bound to take any proceedings, had neglected to institute them.

[3] It is next contended by appellant that the plaintiff is not entitled to any lien upon the property of the defendant railway company, and the court was in error in adjudging that he had such lien that was prior and superior to the lien of the trust company and the present defendant railway company, but the proceeding in this action seems to be in accord with the general practice of the courts in this class of cases. Courts, as before stated, are reluctant to grant injunction after the railway company has commenced operating its road, or to allow the owner to recover in ejectment, and thereby interfere with the use of the premises by the public. Hence various proceedings have been permitted by the courts for securing to a party his constitutional right without interfering with the public interest, and therefore actions in the nature of the present action, or of a similar character, seem to have been instituted by the owner and sustained by the courts to enforce the constitutional rights of the owner of the property, and to secure him compensation for the same.

The plaintiff in this action does not claim a vendor's lien, but authorities and decisions seem to hold that his right is in the nature of such a lien, where ejectment or affirmative injunction would be denied. Lewis on Eminent Domain (3d Ed.) § 885, and authorities cited; Organ v. Memphis R. R. Co., 51 Ark. 235, 11 S. W. 96; Drury v. Midland R. R. Co., 127 Mass. 571; Rio Grande R. R. Co. v. Ortiz, 75 Tex. 602, 12 S. W. 1129; Hobbs v. State Trust Co., 68 Fed. 618; Dayton, X. & B. R. R. Co. v. Lewton, 20 Ohio St. 401. It seems to be also quite generally held that compensation for right of way is given preference over all other claims against the railway company.

[4] It seems also to be well settled that the present railway company, defendant, is legally and equitably liable as the successor of the former company for the value of the premises used by it, belonging to the plaintiff, and that before it can legally occupy and possess the same for its railroad purposes it must satisfy the claim of the plaintiff for its value. This rule seems to be established upon the principle that the present railway company is no more entitled to occupy and use the premises without paying for the same, than was its predecessor. Its use of the premises is therefore without right as against the plaintiff, and the present railway company and the trust company, as trustee in the mortgage for the bonds issued, clearly hold their interest therein, subject to the superior right and claim of the plaintiff to be paid for the premises owned by him.

Mr. Lewis, in his work before referred to, in discussing the subject, in section 885, says: "Where it is held that the title or right to possession may vest before the payment of damages, such title or right is subject to the obligation of making just compensation, which is in the nature of a vendor's lien. A proceeding in equity for the purpose of enforcing this lien is therefore a proper remedy. * * * But in some cases, instead of decreeing a regular foreclosure of the lien, the courts enjoin the use of the land until payment is made. In Ohio it is held that, where the property constitutes a section of a railroad right of way, the decree should be for the sale of the entire road, with its franchises, and not of the property with respect to which the lien exists."

And in section 886 the learned author says: "No rights can be acquired in private property under the power of eminent domain, except subject to the duty of making just compensation therefor. Consequently the party originally taking or occupying the property cannot transfer to another, by mortgage, lease, or otherwise, any right in the property, except subject to the same duty. In other words, the owner's claim for just compensation is paramount to any right which can be derived by or through the party making or seeking the condemnation. Different courts work out this result in different ways, but we believe all concur in reaching it in one way or another. Some courts hold that the claim for compensation is in the nature of a vendor's lien, and as such is prior to any right which the party condemning can acquire or transfer. Others hold that no title passes until payment, and consequently that a mortgage or conveyance by the party condemning conveys nothing to the grantee, except such possessory rights as the former may have. The later view seems to us the correct one, and is in accordance with the views heretofore expressed in regard to the proper interpretation of the Constitution. But it is immaterial which view is correct, so far as the present inquiry is concerned. If title does not pass until compensation is made, the case is clear. On the other hand, if it be held that the title may vest before compensation is made, yet it only vests subject to the obligation of making compensation. The instrument or proceedings by which title is acquired is notice of the claim for compensation, and third parties dealing with the property are bound to ascertain whether this claim has been satisfied."

In section 887 the learned author further says: "Under the authorities referred to in the last section and the principles which they sustain, it follows that the owner of property which has been taken for public use, and not paid for, may have the same remedies to enforce his rights against those claiming under the party condemning as against such party himself. * * * The first company has taken possession of private property for a public use, and is under an obligation to make just compensation to the owner.

When its rights and franchises are transferred to a new company, by foreclosure or otherwirse, the new company is under no obligation to use the property, nor is it liable for the debts of the old company. The new company may refuse to use the property at all, or it may condemn it anew. In such case it would lose the benefit of the improvements upon the property. But. if it elects to use the property for the purposes for which it was originally taken, and as the successor of the first company, knowing that the right to use it can be obtained only by the payment of just compensation, it in legal effect assents to the performance of this obligation, and an implied promise to pay the same to the owner arises, upon which an action may be maintained. 'If a person accepts anything which he knows to be subject to a duty or charge, it is rational to conclude that he means to take such duty or charge upon himself, and the law may very well imply a promise to perform what he has so taken upon himself.'" Broom's Legal Maxims, 709. And the learned author cites a very large number of decisions in support of the text, among which are the following: Organ v. Memphis, etc., R. R. Co., supra; New York, etc., R. R. Co. v. Hammond, 132 Ind. 475, 32 N. E. 83; Rio Grande, etc., R. R. Co. v. Ortiz, supra; Dayton, X. & B. R. R. Co. v. Lewton, supra.

In the last case cited, the Supreme Court of Ohio, discussing very fully the rights of an owner of property taken for public use, who institutes an action to secure the payment for his property, and in which case a decree for the sale of the whole line of the road to satisfy the plaintiff's lien was adjudged, says: "And this is the only mode in which the rights and interests of other parties, either as owners or lienholders upon the road, can be protected, and their property or security saved from absolute destruction."

[5] It is further contended by the appellant that the value of the land should have been found by the jury as of the date when it was originally appropriated by the first company in 1891 or 1892, but this contention is clearly untenable. We are of the opinion that under the constitutional provision in force in this state, where land is appropriated for railway purposes without the

consent of the owner, and he is compelled to bring an action to enforce his claim for the value of the property taken, the value should be estimated as of the date of commencing his action, or at the time of trial. Lewis on Eminent Domain, § 705; Cook v. South Park Com'rs, 61 Ill. 115; Oregon & Cal. R. R. Co. v. Barlow, 3 Or. 311; Northeastern Neb. Ry. Co. v. Frazier, 25 Neb. 53, 40 N. W. 609; Mo. Pac. R. R. Co. v. Hays, 15 Neb. 224, 18 N. W. 51; South Park Com'rs v. Dunlevy, 91 Ill. 49; Newgass v. St. Louis R. R. Co., 54 Ark. 140, 15 S. W. 188; Missouri Pac. R. R. Co. v. Wernwag, 35 Mo. App. 449; Lieberman v. Chicago R. R. Co., 141 Ill. 140, 30 N. E. 544.

As the plaintiff remained the owner of the property until the proceedings taken to enforce his claim for the value of the same, it is quite clear he is entitled to the value of the land at the time he takes proceedings to enforce payment for. the same. If the property has advanced in value during the time that it has been illegally in the possession of the railway company, the plaintiff is entitled to the benefit of that advance, and not the party who has illegally held possession of the same.

Finding no error in the record, the judgment of the court below and order denying a new trial are affirmed.

SMITH, P. J. I concur in the views expressed by Justice CORSON in this case, but desire to refer briefly to the proposition last discussed in the decision.

It seems to me this action in legal effect should be viewed as a condemnation proceeding, which the law permits the property owner to initiate because the corporation has not done so. It is not an action for damages for trespass, nor an action for the value of land wrongfully taken and appropriated by the defendant company. It is true that, as to the public and its duties as a carrier, the company may have assumed obligations which might estop it from denying its ownership of plaintiff's land to the. injury of the public, and it is equally true that on grounds of public inconvenience the property owner may not resort to ejectment or injunctional relief, when he has been guilty of laches in seeking these remedies. But the public has no interest in the amount of

compensation which should be paid the owner whose property the corporation intends to appropriate, under the right of eminent domain, and no public interest or right requires discussion in that connection. The Constitution of the state declares that "private property shall not be taken for public use or damaged, without just compensation as determined by a jury, which shall be paid as soon as it can be ascertained, and before possession is taken." Under this provision, a corporation is powerless to acquire any rights or fix any liability,, as between itself and the property owner, by wrongfully taking possession of private property. To hold otherwise would be to allow a trespasser to found rights upon its own wrongful acts.

In such an action as this, therefore, the compensation to be paid an owner of property should be determined under precisely the same rule as though the corporation itself had begun a condemnation preceeding at the date of the beginning of this action. Such a rule of compensation would be equally just to both corporation and property owner, because at all times it was within the power of either to begin an action, and thus fix the date at which the value of the property, as a measure of damages, should be estimated by the jury, and neither could justly complain of injury by reason of enhancement or depreciation to value of property. It would seem that any other view may easily result in confusion of rights and remedies, and an abandonment of fundamental principles of law which should govern the rights of both corporation and the owner of property.

WHITING, J. While I agree, in the main, with the conclusions reached by my learned colleague, as such conclusions are set forth in the foregoing opinion, yet I am of the opinion that the learned trial court was in error upon at least one proposition, and that such error necessitates a reversal of the judgment of such court.

Various questions involved in this case, while new to the courts of this state, have been before the federal courts and the courts of many of our sister states in cases almost without num-

ber.  An examination of the decided cases ·shows an irreconcilable conflict of reasoning and conclusions upon many points.  This conflict probably arises partly from differences in the constitutional provisions of the several states pertaining to the right of eminent domain, from differences in the statutory provisions relating to remedies and proceedings for condemnation of property under the right of eminent domain, and, perhaps, even more from the nature of the particular action in which the views of the court happened to be expressed; but, allowing for all these basic causes for different conclusions, one would be unable to harmonize the almost numberless decisions.  Before entering upon a discussion of the specific question upon which I am unable to agree with the views of my colleague, I believe a further discussion of the fundamental principles underlying the right of eminent domain and the right to damages for property taken thereunder may be of value.

The right of eminent domain is one antedating the governments of this country; it is a right inherent in the sovereign power, and could be exercised by such sovereign power, were there no constitutional provisions in relation thereto; the only need and the object of the constitutional provisions is to limit the exercise of the right that it may not be abused; it is the right of the sovereign power to condemn and take for public use the property of a private individual; it is a right inherent in society, and founded upon the principle that the rights of society as a whole are superior to those of an individual.  This power to take property under the right of eminent domain, under our Constitution, may be delegated to persons and corporations.  Under such delegated authority, property can only be taken for purposes recognized as essential to the public welfare.  From the very nature of this right and the reasons upon which it is based, the public is an interested party in every taking or proceeding to take property under such right and the public's rights and interests should at all times be kept in mind in proceedings involving the right of eminent domain.  Justice is guaranteed to the owner of property taken, by that provision of our Constitution providing that private property cannot be taken "with-

out just compensation, as determined by a jury, which just compensation shall be paid as soon as it can be ascertained and before possession is taken." One thing well to bear in mind, in the consideration of rights and liabilities and remedies therefor in matters of eminent domain, is that, given a proper person or corporation and a proper use to which the property is to be put, such person or corporation has the absolute right to acquire the property or use thereof, with the accompanying right in the owner to be paid for his property or the use thereof. It will thus be seen that there is an inherent difference between a case where a person or corporation has wrongfully entered upon and taken possession of the property of another, to which property or the use thereof it had no right whatsoever, the person or corporation so taking the property not belonging to a class authorized to take such property, or the taking of such property not being for a purpose warranting such taking under the power of eminent domain—and a case where a person or corporation, authorized (as in the case at bar), under the facts alleged and proven to take the property for the purposes for which it did take the same, took it without first having the compensation to owner assessed, and paying same. In the one case there is a taking of that to which and in which the party taking has no rights whatsoever; in the other, the party taking has the right to the property, or the use thereof, subject to performance of certain conditions precedent. While in both cases the entry and taking of possession are wrongful, yet there is an inherent difference in the rights of the parties, and in the nature and extent of the damage inflicted, that may well give rise to different remedies and different measures of damages. In either case, if the wrong is merely threatened, injunction might lie to prevent same; and, under some circumstances, even after actual entry and taking of possession, if the innocent party moves speedily, injunction might issue to restrain the wrongdoer from altering or using the property. So, also, in either case, where the injured party acts speedily, he could undoubtedly bring the ordinary action to recover damages for trespass, or bring ejectment to regain the possession of the prop-

erty and recover damage for its use; he might, also, in either case, have a right to waive the tort and sue in assumpsit for the value of the property. All of the above remedies would be founded on rights and remedies not in any respect traceable to the law of eminent domain. Let it be borne in mind that a party entitled to acquire property under the right of eminent domain can acquire the title to such property, or the right to use the same, in one of three ways—by purchase, under right of eminent domain, or by prescription.

Why should not the owner of land that has been taken without compensation be allowed to say to one who took his land under circumstances such as appear in this case: "You had a right, for the public welfare, to take my land for the use you have put it to; you have taken my land and put it to such use; the land is still mine; I recognize the right of the public to have my land so used; I do not care to enjoin such use, nor to eject you from the land, and it might be inequitable to do so; you should have taken steps to ascertain what recompense I was entitled to for the taking of my property for this use; you failed to do so; I was damaged by your wrongful entry and use of my premises, the amount which a jury would have allowed me, at the time of your entry, as recompense for the taking of my lands for such use; you have acquired neither the title nor the right to use my lands; I should be allowed the right to have the recompense I am entitled to determined by a jury, and you should pay the same, as the interest of the public require that you use my premises permanently; when you occupied and used these premises, you estopped yourself from saying that you did not take same under right of eminent domain, and intended to recompense me therefor; I hold the title to this land as security for the payment of such recompense, as I am entitled to under the Constitution; you have so connected this right of way with the remainder of the right of way used by you that the rights of the public would be harmed by the separate sale thereof; therefore, in order to protect me and at the same time protect the rights of the public—which public rights lie at the very foundation of any rights

which you can claim herein—my lien should be held to cover all of your right of way; if you do not pay the recompense fixed by the jury, I should have a decree for the sale of the whole of such right of way to satisfy my judgment."

And why should not such owner be entitled to say to a purchaser from the party who took said land, and to a person claiming under such purchaser: "The records show that your predecessor had never acquired a right to these premises or their use, by purchase or condemnation; you were therefore not an innocent purchaser; and, when you took said premises and continued to use the same for right of way, you took them subject to the rights which I had in same."

I would call particular attention to the complaint herein, and would ask if, under the same, the plaintiff's relief sought is not strictly in accord with the thoughts expressed in the foregoing queries. What is the nature of the action? The complaint sets forth facts showing that this property was originally taken by, and has at all times been, used by corporations and persons authorized, under the facts pleaded, to have condemned and taken the property under right of eminent domain; that the property has been used for purposes authorizing such condemnation and taking; that there was no such condemnation; and that plaintiff has never been recompensed therefor. The complaint asks that the defendants be required to commence proceedings to have the recompense plaintiff is entitled to ascertained by a jury, and that the judgment for such recompense, when found, be a first lien on the railroad and its appurtenances. The theory upon which this complaint was drawn was clearly not that of bringing anyone of the actions that would lie against an ordinary trespasser, but was exactly in line with the special rights and remedies suggested above.

I think it clear in reason that such an action will lie, and the authorities are numerous in support of the principles underlying same. The nature of this action seems to be similar to that of Stauffer v. East Stroudsburg Borough, 215 Pa. 143, 64 Atl. 411, in which the court said: "The plaintiff proceeded under his stat-

utory right for damages alleged to have been suffered for one appropriation, treating it as having been lawfully made, and not bringing an action for alleged trespass by virtue of an unlawful taking." See In re Clark v. Water Commissioners, 148 N. Y. 1, 42 N. E. 414. I would call particular attention to the opinion of the court in Organ v. Memphis & L. R. R. Co., 51 Ark. 235, 11 S. W. 96, where, in a case similar to this the court says: "But the owner may waive formal condemnation proceedings, and all formal modes of transfer, and elect to regard the action of the railroad company as taking the land under the right of eminent domain, and demand and recover just compensation. * * * When, therefore, he elects to demand compensation for land necessarily used in the contruction of a railroad, he assumes a relation to the railroad company like unto that of a vendor who sells his land on time, and retains the title, and agrees to deliver it when the purchase money is paid." See, also, Rio Grande & E. P. Ry. Co. v. Ortiz, 75 Tex. 602, 12 S. W. 1129, cited in the majority opinion herein; Bravord v. Cincinnati, H. & I. R. Co., 115 Ind. 1, 17 N. E. 183; and Strickler v. Midland Ry. Co., 125 Ind. 412, 25 N. E. 455.

But it seems to me clear that the measure of damages in such an action must be the recompense to which the owner would have been entitled at the time of the original taking of the property, together with interest thereon since then. Furthermore this is the only equitable measure of damages in all cases. My colleague has cited several cases in support of the conclusion that respondent was entitled to the value of the land at time this suit was brought, or at time of the trial thereof. With the possible exception of the Arkansas case, there is not one of these cases that is in any wise in point. The case in 61 Ill. 115 holds that, where a law was passed authorizing the appropriation of certain described lands for public purposes the value at time of actual appropriation, and not at date law was passed, was the measure of damages. In 91 Ill. 49, it was held that, where a petition for condemnation had been filed, the date of such petition, and not the date of trial of action, was the date at which value of property

should be fixed. In 141 Ill. 140, 30 N. E. 544, the petition was filed October 18, 1888, and amended several times; the last amendment being September 8, 1890. The court held that the value of the property on October 18, 1888, controlled. In 3 Or. 311, is not found an opinion of an appellate court, but merely the history of a trial in circuit court, where no reason or authority for the instructions of such court are given. In the cases found in 15 Neb. 224, 18 N. W. 51, and 35 Mo. App. 449, the holdings were that the time of the filing of the petitions by the railroad companies, and not some later date, such as date of trial of cause, was date at which value of property should be found, and both of these cases contain statements directly in support of my views herein; the Nebraska court saying, "The authorities seem to agree pretty generally that the damages in such cases must be assessed as of the time of taking," and the Missouri court saying, "It was only the value of the property at the time of the appropriation which, under the law, was still open for judicial investigation by a jury." I would cite in support of my views Van Huson v. Omaha Bridge & T. Ry. Co., 118 Iowa, 366, 92 N. W. 47; Stauffer v. East Stroudsburg Borough, supra; Daniels v. C., I. & N. R. Co., 41 Iowa, 52. In this last case the railway company had been in possession of the land some 12 to 15 years, and it was not until after such long occupation that the defendant company brought proceedings to have the damages assessed. I quote with approval the following from the opinion in said case:

"Had they been instituted prior to, or upon defendant's taking the possession of the land, no different right would have been acquired by them than they obtain in the present action. In each case the measure of plaintiff's damages is the same, namely, the value of the land, without regard to benefits resulting from the improvement. Plaintiff, had the damage been assessed upon the occupancy of the land, would have received no compensation for its prospective uses, other than as these would enter into the estimate of its value. The same matters now will determine the value that it would have then. It will be seen, in view of these considerations that the value of the land at the time of the ap-

propriation, with interest upon the sum assessed from that date until judgment in this case, is the just measure of plaintiff's damages. This conclusion is supported by the further considerations that the remedy, by the same proceeding defendants have instituted, has been within plaintiff's reach all the time since the occupation of the land by the defendants, and that a different rule of damages claimed by plaintiff, namely, the present value of the land, would, in case of the depreciation of the property after the appropriation, work manifest injustice to the landowner."

As stated before, this is not an action in ejectment, nor an action to recover damages for the unlawful occupation and detention of the real property, but an action to recover for the wrongful appropriation thereof. As a result of this action, the title to the land will be vested in the defendant railway company. The action is very analagous to an action brought to recover damages for the conversion of personal property, and to my mind no better rule for measure of damages could be laid down than that prescribed by section 2315, Revised Civil Code, in case the injured party does not proceed with diligence, to wit, the value of the property at the time of the appropriation, with interest from that time.