**CITY OF SIOUX FALLS, Plaintiff and Appellee,**

v.

**Arnold E. MILLER and Pansy O. Miller, Defendants and Appellants.**

**No. 17711.**

Supreme Court of South Dakota.

Considered on Briefs May 28, 1992.

Decided Nov. 4, 1992.

William P. Fuller and Mark J. Welter of Woods, Fuller, Schultz & Smith, Roger L. Schiager, Sioux Falls, for plaintiff and appellee.

Robert L. O'Connor and Patrick J. Kane, Sioux Falls, for defendants and appellants.

WUEST, Justice.

The City of Sioux Falls (City) brought an action against the Millers, Arnold and Pansy (the Millers), for violating the City's zoning ordinance. The Millers counterclaimed for continuing flood damage to their business, allegedly caused by City's

raising a nearby street grade and replacing a ditch and culvert system with narrow and inadequate storm sewers which collected and discharged surface water onto the Millers' property. The counterclaim was based primarily on the theories of nuisance and inverse condemnation. The trial court set City's claim for trial and granted City's motion for summary judgment on the Millers' counterclaim. The Millers appeal. We reverse.

The primary issue involved in this appeal is whether the trial court erred in granting the City's motion for summary judgment and holding the Millers' claims were time-barred.

## FACTS

In 1973, City constructed and installed a storm-sewer system and street in the industrial park area on its north side. The Millers' property lies within this area. When the Millers began occupying their property, City was in the process of constructing Blackhawk Street in front of their property. According to the Millers, the property flooded shortly after their occupation in 1973. In October of 1973, the Millers retained a Sioux Falls attorney to "investigate suit against the City of Sioux Falls" allegedly arising from the grading of and installation of gutter on Blackhawk Street. The attorney wrote the City Engineering Department on October 22, 1973, advising City that litigation was being considered. No suit was brought.

In the latter part of the 1980's, City received a series of complaints from adjoining property owners concerning the junk-yard-like conditions on the Millers' property. Glenn Adler, Environmental Health Supervisor for the City Health Department, sent a letter to Mr. Miller requesting he take steps to clean up the property. Miller failed to respond, and Adler personally visited the premises and was concerned about its condition. The property was strewn with concrete rubble and blocks, old tires, discarded machinery parts and junk vehicles.

City instituted a nuisance action against Miller seeking a court order requiring the Millers to abate the nuisance on their property.

The Millers answered and counterclaimed, seeking monetary damages for periodic flooding of the property. The Millers allege City, in 1973, negligently constructed and installed Blackhawk Street and the storm sewer system, causing surface water to be diverted onto their property. The Millers contend they suffered periodic episodes of flooding, resulting in $2,000 worth of damage on each occasion. They further allege the periodic flooding diminished the value of their property in an amount not less than $50,000.

City moved for summary judgment on the basis of the statute of limitations and laches. The statute of limitations motion was premised upon the fact the street and sewer system was designed and constructed in 1973. The laches motion was based on the Millers' recognition of a potential claim in 1973 and delay in taking any action until counterclaiming in 1989. The trial court granted summary judgment on behalf of City on the basis that the Millers' cause of action accrued in 1973, and was barred by the six-year statute of limitations set out in SDCL 15-2-13(3).[1] The Millers appeal the trial court's award of summary judgment.

We first note our standard of review of orders granting summary judgment:

In reviewing a grant or denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the non-moving party and reasonable doubts

---

**1.** SDCL 15-2-13(3) provides:

Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued:

....

(3) An action for trespass upon real property[.]

should be resolved against the moving party. The non-moving party, however, must present specific facts which demonstrate a genuine, material issue for trial. When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of a trial court, affirmance of a summary judgment is proper. *Clauson v. Kempffer*, 477 N.W.2d 257, 258 (S.D.1991) (quoting *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 498 (S.D.1990) (citations omitted)).

The trial court, relying on *King v. Hutterische Bruder Gemeinde*, 32 S.D. 541, 143 N.W. 902 (1913), held the water problem was of a "continuing permanent nature." In addition, the court stated the statute of limitations began to run in 1974 when the damage was apparent to the Millers. The Millers assert the trial court erred in ruling their cause of action was time-barred because the damage sustained "is easily abatable without dismantling the offending street project," thereby raising a material issue as to whether the cause of injury was continuous and whether a new cause of action arose with each occurrence.

■ Initially it is important to classify whether the nuisance involved in this case was a "continuing nuisance" or a "permanent nuisance." This distinction in nuisance actions is important for statute of limitations purposes. "If the invasion is deemed to be 'permanent,' there is but one cause of action, and the statute of limitation commences to run from the time the invasion began, or when it became known to the aggrieved party." *Beatty v. Washington Metro. Area Transit Auth.*, 860 F.2d 1117, 1122 (D.C.Cir.1988); Dan D. Dobbs, *Handbook on the Law of Remedies* § 5.4, at 343 (1973); 58 Am.Jur.2d *Nuisances* § 307 (1989). In general, a permanent nuisance is one which "will be reasonably certain, or will be presumed, to continue indefinitely ..." in the future. 58 Am.

Jur.2d § 27; *Beatty*, 860 F.2d at 1122 (citing *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 339 n. 4, 53 S.Ct. 602, 604 n. 4, 77 L.Ed. 1208, 1212 n. 4 (1933)). That a nuisance is permanent, contemplates "that it is at once necessarily productive of all the damage that ever can result from it." *Patz v. Farmegg Products, Inc.*, 196 N.W.2d 557, 562 (Iowa 1972); 58 Am.Jur.2d § 27. In other words "by one act a permanent injury is done, [and] damages are assessed once and for all." *Baker v. Burbank–Glendale–Passadena Airport Auth.*, 39 Cal.3d 862, 218 Cal.Rptr. 293, 297, 705 P.2d 866, 870 (1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986). In such cases, plaintiffs ordinarily are required to bring one action for all past, present, and future damage. *Id.* "[T]he applicable statute of limitations may bar any action if it is not brought within the prescribed period after the first actionable injury; that is, the applicable [statute] of limitations bars all claims of damages, present and future, after the last of the statutory period." 58 Am.Jur.2d § 307. "Nuisances which are unquestionably permanent in nature have involved solid structures, such as a building encroaching upon the plaintiff's land, a steam railroad operating over plaintiff's land, or a grade of a street for a rail system." 58 Am.Jur.2d § 27.

■ On the other hand, "if a nuisance is a use which may be discontinued at any time, it is considered continuing in character." 58 Am.Jur.2d § 28. "A temporary or continuing nuisance has been said to be one which is intermittent or periodical." *Id.* Accord *Beatty*, 860 F.2d at 1122 (citing *Harrisonville*, 289 U.S. at 337, 341, 53 S.Ct. at 603, 605, 77 L.Ed. at 1213); *Baker*, 218 Cal.Rptr. at 297, 705 P.2d at 870. Thus, "if a structure, even though permanent, can be changed, repaired, or remedied at a reasonable expense to abate a nuisance, the condition is temporary." 58 Am.Jur.2d § 30. Where an invasion is deemed "temporary" or "continuing," a new cause of action arises with each new invasion or injury. In other words, the persons harmed may bring successive causes of

action for damages until the nuisance is abated. Dobbs, *supra*, § 5.4, at 343; *Beatty*, 860 F.2d at 1122; *Baker*, 218 Cal.Rptr. at 297, 705 P.2d at 870.

Professor Dobbs, in his hornbook, sets out several factors courts have considered in determining whether a nuisance is permanent. These factors are:

(1) [I]s the source of the invasion physically permanent, i.e., is it likely, in the nature of things, to remain indefinitely?

(2) [I]s the source of the invasion the kind of thing an equity court would refuse to abate by injunction because of its value to the community or because of the relations between the parties?

(3) [W]hich party seeks the permanent or prospective measure of damages?

Dobbs, *supra*, § 5.4, at 338.

Professor Dobbs further states *"First,* a nuisance or trespass is usually not regarded as a permanent one unless it is physically permanent or likely to continue indefinitely." *Dobbs, supra.* Under the second part of the test, Dobbs mentions that there are two large classes of cases, in which courts will not order removal of the trespassing structure or cessation of the operation of a nuisance-causing activity. In one class the defendant has the power of eminent domain. In such cases, courts will not force the defendant to cease operation since the defendant could, after a formal condemnation, continue its operation. "In a case like this, then, the source of the nuisance or trespass is physically permanent, and also legally permanent, in the sense that courts will not require its removal." *Id.* at 340.

In theory, if a nuisance is deemed permanent, there is only one unceasing invasion of the plaintiff's interests and only one cause of action.... The statute of limitations of the one cause of action must, then, begin running from the time the invasion began, or from the time it became manifest.

*Id.* at 343.

The issue of what constitutes a permanent nuisance was addressed by this court in *King*, which was relied on by the trial court below. In *King*, the defendant owned a milldam on the James River downstream from plaintiff. The plaintiff alleged the defendant reconstructed and heightened the dam in such a way as to prevent the natural flow of water, thereby backing water onto the plaintiff's property. Each year, plaintiff's property was flooded due to the modifications made to the dam. This court concluded the damage "was a permanent injury to the land for which there could be but one recovery[,]" and that the cause of action accrued immediately upon the erection of the dam. *Id.*, 32 S.D. at 543, 143 N.W. at 902–03.

██ The street reconstruction and grading completed by the City was a permanent structure. Mr. Miller, in his deposition and in his affidavit opposing summary judgment, acknowledged abating the nuisance would require reconstruction of the roadway and/or the drainage system. Moreover, since City has the power via eminent domain to continue to flood the Millers' property, it is doubtful an equity court would order the removal or replacement of the street-sewer system involved here. *See* Dobbs, *supra* § 5.4, at 337–43. As such, the nuisance is not reasonably abatable.[2] In *Spaulding v. Cameron*, 38 Cal.2d 265, 239 P.2d 625 (1952), the California Supreme Court stated: "The clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operations of a public utility." *Id.* 239 P.2d at 627 (quoted by Mosk J., concurring in part and dissenting in· part, in *Baker*, 218 Cal.Rptr. at 300, 705 P.2d at 874). Based on the above reasoning, we hold the trial court was correct in concluding, as a matter of law, the nuisance involved here was permanent, and, therefore, the statute of

---

**2.** The Millers' argue the situation could be remedied simply by raising their building at City's expense, and therefore, the nuisance is easily abated. This reasoning is flawed because the property would still be flooded and, in reality, no abatement would have occurred.

limitations began to run when the Millers' property was first flooded.

■ This does not end our inquiry, however, as we must decide which statute of limitations is applicable. As stated previously, the trial court applied the statute of limitations set out in SDCL 15–2–13(3) and held the six-year statute of limitations had run. We conclude the trial court applied the wrong statute of limitation.

Art. VI, § 13 of the South Dakota Constitution provides: "Private property shall not be taken for public use, or damaged, without just compensation[.]" We have held, on more than one occasion, the right to compensation for the taking of land for public use is not subject to a six-year or ten-year statute of limitations, but is barred only by adverse possession for the statutory period of twenty years. *Johnson v. Hawthorne Ditch Co.*, 32 S.D. 499, 506, 143 N.W. 959, 962 (1913); *Faulk v. Missouri River & N.W. Ry. Co.*, 28 S.D. 1, 11, 132 N.W. 233, 236–37 (1911). Both cases involved companies possessing the power of eminent domain and inverse condemnation claims. We held Art. VI, § 13 of the South Dakota Constitution:

> [W]as designed, and its effect is, to prevent the taking of private property for public use, until the damages occasioned thereby shall be ascertained and paid to the owner of the property, and a party cannot be deprived of that protection by statutes of limitation within the period of prescription for the recovery of property, by ejectment, or, ... until the law presumes that compensation has been paid to the owner, which is at the expiration of 20 years.

*Faulk*, 132 N.W. at 236. We most recently addressed this issue in *Boland v. City of Rapid City*, 315 N.W.2d 496, 501 (S.D. 1982), where, relying on Art. VI, § 13, we held the twenty-year statute of limitations applying to adverse possession is applicable where property rights are damaged in the name of the public, regardless of the underlying tort claim.[3] (The twenty-year statute of adverse possession is contained in SDCL 15–3–1, –2.) The Millers' cause of action accrued, at the earliest, in 1973. Their counterclaim was filed in 1989, four years before the statute of limitations had run. Thus, the trial court was incorrect in concluding the statute barred the Millers' claim.

## II.

In the alternative, City asserts the Millers should be estopped by operation of the doctrine of laches.

> To support a determination that laches bars [the Millers'] action it must be found that, (1) [they] had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, [they] engaged in an unreasonable delay before commencing the suit, *and* (3) that allowing [them] to maintain the action would prejudice [City].

*Conway v. Conway*, 487 N.W.2d 21, 24 (S.D.1992); *Golden v. Oahe Enterprises, Inc.*, 90 S.D. 263, 279, 240 N.W.2d 102, 110 (1976). *Accord Cheskey v. Cheskey*, 298 N.W.2d 180, 183 (S.D.1980). " 'Prejudice cannot be inferred merely from the passage of time.' " *Cheskey*, 298 N.W.2d at 183 (quoting *Cullinan v. Cullinan*, 226 N.W.2d 33, 36 (Iowa 1975) (citations omitted)). In *Faulk*, we held, "[m]ere delay, short of the statute of limitations, will not estop a party from asserting his right to the property, unless he has been guilty of some act, declaration, or statement that has, in some manner, misled the other party to his prejudice." *Faulk*, 132 N.W. at 237. City's allegation of prejudice consists of its claim "[t]he passage of time has resulted in lost witnesses and dimmed memories." Passage of time is not attributable to the Millers. The City has not alleged any act or statement by the Millers which misled the City to its detriment. In-

---

**3.** "Compensation for damage to property is secured by the same constitutional provision (Const. art. 6, § 13), and is of the same character as compensation for the taking of property for public use. Within the principles governing eminent domain, [a city] had a constitutional right to damage [private] property, but [may] do so only after ascertaining the amount of damage and paying such amount." *Olson v. City of Watertown*, 57 S.D. 363, 373, 232 N.W. 289, 293 (1930).

deed, where a twenty year statute of limitations is involved, it would seem that missing witnesses and "dimmed memories" will often be a problem.[4]

Nevertheless, the trial court did not make any decision on the laches issue, so we reverse the trial court's order granting summary judgment and remand with directions to decide the laches issue.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Here, the trial judge *decided the case correctly*, i.e., to grant a summary judgment in favor of the City of Sioux Falls against the Millers, *for the wrong reason* (6 year statute of limitations). Notwithstanding, under our holdings, I would affirm the trial court. *See Waddell v. Dewey County Bank*, 471 N.W.2d 591 (S.D.1991); *Garrett v. BankWest, Inc.*, 459 N.W.2d 833 (S.D.1990); *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118 (S.D.1985); and *Ruple v. Weinaug*, 328 N.W.2d 857 (S.D. 1983). Stare decisis.

Below, City moved for summary judgment based upon (1) a statute of limitations *and* (2) *laches*. Per the settled record, at pages 61 and 68, counsel for Sioux Falls based the motion to grant summary judgment upon the basis that the Millers believed they had a claim in 1973 and took no action thereon until they asserted a counterclaim in this lawsuit in 1989. (Judge Heege had these facts before him and, in essence, determined the Millers had slept on their rights.) And surely they did. As *laches* facts were before the trial court, there is no legal reason whatsoever to return this case to the trial court. It is marching the troops up the hill to march them down again. The Supreme Court can decide this case now, on the record, based upon stare decisis. We are not plowing

any virgin ground in this case. I refer, as supporting authority, to *Duncan v. Pennington County Housing Authority*, 382 N.W.2d 425, 427 (S.D.1986) wherein we cited with approval *Chicago and North Western Ry. Co. v. Bradbury*, 80 S.D. 610, 612–13, 129 N.W.2d 540, 542 (1964):

> [M]ere passage of time is not the test. The question of laches "does not depend, as does the statute of limitations, upon the fact that a certain time has elapsed since the cause of action accrued, but whether, under all the facts and circumstances of the particular case, the plaintiff is chargeable with want of due diligence in failing to proceed with reasonable promptitude."

Let us apply the facts to the above passage: (1) Millers retained counsel in 1973 to determine if Millers had a cause of action for work on Blackhawk street and installation of a storm sewer system (2) Miller's attorney advised the City of Sioux Falls' Engineering Department by letter dated October 22, 1973, that a lawsuit was being considered for this construction (3) No suit was ever filed (4) No demand for damages or relief *of any kind* was requested until (5) The City of Sioux Falls started this lawsuit, a nuisance action, against Millers for maintaining an eyesore consisting of old scrap iron, scrap lumber, tires and inoperable machinery existing upon the Miller premises. Common sense tells us that Millers did not act with due diligence or with reasonable promptitude. And that is precisely why Judge Heege entered summary judgment to the City of Sioux Falls.

Elements of laches here? Obviously. Depositions and affidavits reflect:

1. Millers had full knowledge of the facts;

2. For over 16 years, with this knowledge, they did nothing; only when the City came after them for maintaining a nuisance did they arise from their legal slumber to cry out: "Foul, you owe us

---

4. The cases cited and relied upon by City, are materially distinguishable in that the plaintiffs failed to bring a cause of action prior to the defendants having engaged in substantial construction. *Citizens and Landowners v. Secretary U.S. Dep't of Energy*, 513 F.Supp. 257 (D.S.D. 1981); and *Sierra Club v. Cavanaugh*, 447 F.Supp. 427 (D.S.D.1978). The defendants in those cases would have been greatly prejudiced were the court to allow the cause of action to continue despite the extensive delay by the plaintiffs.

$50,000.00 (for diminishment of value of property) and $2,000.00 for each claimed periodic flooding;

3.  Prejudice to the City (City attempted to find property owners—and could not—who had previously owned property near the Millers' property and who would have knowledge of the claimed damages); further, in this connection, an affidavit is on file demonstrating prejudice: Millers contended there were many property owners *who had actual knowledge* of the flooding, damage, and drainage situation; thereupon, these "witnesses," upon interview, could not substantiate or recall facts which Millers were advocating for the basis of a cause of action. The obscuration of evidence is an important consideration to the City of Sioux Falls in this case. In 27 Am.Jur.2d *Equity* § 170 (1966), it is noted:

The prejudicial situation in which the complainant's suit places the defendant may be occasioned by inability on the part of the latter, because of the complainant's delay in asserting his claim, to produce evidence in defense thereof, where matters of proof have been lost, witnesses have died, and the transaction giving rise to the suit has become obscured by the lapse of time.

Finally, you don't have to kill a rabbit twice. This Court has held, oft-over, that "In reviewing a grant of summary judgment, we premise our decision on the principle that affirmance of such a judgment is proper if there exists any basis which would support the trial court's ruling." *Weatherwax* at 119; *Ruple* at 859, 860; *Maryland Casualty Company v. Delzer*, 283 N.W.2d 244 (S.D.1979). There is reason here: Laches.