2005 SD 57

**ACTION CARRIER, INC., Plaintiff and Appellant,**

v.

**UNITED NATIONAL INSURANCE COMPANY, Defendant and Appellee.**

**No. 23204.**

Supreme Court of South Dakota.

Argued March 21, 2005.

Decided May 11, 2005.

John C. Wiles of Wiles & Rylance, Watertown, SD, for plaintiff and appellant.

R. Alan Peterson and Lee A. Magnuson of Lynn, Jackson, Shultz & LeBrun, Sioux Falls, SD, for defendant and appellee.

JENSEN, Circuit Judge.

[¶ 1.] Action Carrier, Inc. (Action) appeals a trial court order setting aside a default judgment obtained by Action against United National Insurance Company (United) and a separate order deferring ruling on Action's request for attorney's fees and costs. We affirm.

## FACTS

[¶ 2.] Action was insured under a policy of insurance issued by United. The insurance policy was reinsured by Assicurazioni Generali S.P.A. (Generali). United and Generali are large, sophisticated insurers. Under the reinsurance agreement, United merely fronted the Action policy as the named insurer. Generali bore the entire risk for claims associated with the policy.

[¶ 3.] United issued a number of insurance policies under the reinsurance arrangement with Generali. Generali was responsible for the supervision and management of any claims or lawsuits involving these policies. United had no involvement in managing either the claims or lawsuits. Upon receipt of notice of a lawsuit under a reinsured policy, United would forward the lawsuit to Ron Coleman and Associates (Coleman), a third party claims administrator for Generali. Coleman managed the defense of the lawsuit unless it alleged claims outside the parameters of Coleman's claims authority.[1] When a lawsuit fell outside the scope of Coleman's authority, Coleman sent the lawsuit to Generali to manage the defense in house.

[¶ 4.] Action filed this lawsuit against United claiming it had overpaid deductibles on the United policy and sought a refund of the claimed overpayments. The South Dakota Division of Insurance (Division) accepted service of the summons on

---

1. Ron Coleman, the President of Coleman, testified by deposition that as a third party administrator for Generali, Coleman had complete authority and discretion to manage claims against an insured which did not exceed $100,000. Coleman was required to forward all suits exceeding $100,000 or direct claims against the insurer to Generali for handling. Coleman had no further involvement in these actions, unless Generali contacted Coleman and requested assistance from Coleman. Action points to language in the third party administrator agreement which suggests that Coleman had more contractual authority than Coleman testified to in his deposition, but Action presented no evidence that Coleman's testimony was not consistent with the practice between the companies in handling these claims.

behalf of United on August 16, 2001, which started the thirty day period to answer.

[¶ 5.] United's general counsel, Richard Marsh (Marsh), received the summons and complaint from Division on August 21, 2001. Marsh directed the summons and complaint to Gerard Durkin (Durkin), Vice President of Claims for United. Durkin faxed the summons and complaint to Coleman on August 27, 2001. Coleman determined that the lawsuit was not within its claims authority because it was a direct claim against the insurer. Coleman faxed and overnight mailed the summons and complaint to John Makowski (Makowski), Vice President of Claims for Generali on August 28, 2001. Makowski was responsible for the overall management of Generali's New York office. Coleman's transmittal letter to Makowski noted service of the summons on August 16, and stated "[p]resumably, you will appoint counsel . . . to file the necessary responsive pleadings."

[¶ 6.] Makowski was out of the office or in meetings and did not see the lawsuit until late in the day on September 4, 2001. Makowski was scheduled to be out of his office from September 5 until September 12. Since Makowski was unable to assign the claim before he left on September 4, he placed the summons and complaint in the priority bin on his desk so that he could assign it for defense upon his expected return on September 12.

[¶ 7.] Generali's New York office was located in 1 Liberty Plaza in New York City, directly across the street from the World Trade Center towers. On September 11, 2001, the World Trade Center towers were tragically destroyed by terrorist attacks. 1 Liberty Plaza was extensively damaged and did not reopen for several months after September 11. During this time, Generali employees were working out of their homes and three temporary makeshift offices. For months following September 11 Makowski spent significant time and energy dealing with the professional and personal upheaval created by the terrorist attacks.

[¶ 8.] 1 Liberty Plaza was under constant armed guard following September 11, but Makowski was permitted to enter Generali's office for thirty minutes on October 10, 2001. The office was disheveled, but he gathered up as many documents as he could take with him. On October 11, Makowski reviewed the Action lawsuit and contacted Coleman to obtain a copy of the Action insurance policy. Coleman was not given any information, nor did it inquire, concerning the status of the Action lawsuit during this communication. Coleman express mailed a copy of the policy to Makowski the next day. Makowski did not assign the summons and complaint to a claims adjustor for Generali until mid-November. The adjustor subsequently contacted South Dakota counsel to defend the action on November 28, 2001.

[¶ 9.] The trial court entered a default judgment against United on November 9, 2001. The notice of entry of default judgment was not served on United until November 27, 2001. United moved to set aside the default judgment on December 13, 2001. Due to discovery delays and a bankruptcy filed by Action, the trial court's order setting aside the default judgment was not entered until February 2, 2004.

[¶ 10.] Action moved for an award of attorney's fees and costs incurred by Action in the proceedings to set aside the default judgment, asserting that such an award was proper if the court set aside the default judgment under SDCL 16–6–60(b) as part of the terms as are just. The trial court entered an order deferring ruling on this issue until the conclusion of the case.

## STANDARD OF REVIEW

[¶ 11.] The circuit court's findings of fact are reviewed under the clearly erroneous standard. *City of Deadwood v. Summit, Inc.*, 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25. "The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them." *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D.1994).

[¶ 12.] The trial court's decision to set aside a default judgment rests with the sound discretion of the trial court and [this Court] will not disturb the trial court's decision absent an abuse of that discretion. *Smith v. Hermsen*, 1997 SD 138, ¶ 8, 572 N.W.2d 835, 838. "An abuse of discretion occurs only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached the same conclusion." *Elliott v. Cartwright*, 1998 SD 53, ¶ 8, 580 N.W.2d 603, 604.

## ANALYSIS AND DECISION

### ISSUE ONE

[¶ 13.] **Did the trial court abuse its discretion in setting aside Action's default judgment on the grounds of excusable neglect?**

[¶ 14.] A trial court may set aside a default judgment under SDCL 15–6–55(c) and SDCL 15–6–60(b) for good cause, including excusable neglect.[2] A party moving to set aside a default judgment for excusable neglect must show both excusable neglect and a meritorious defense. *Upper Plains Contracting Inc. v. Pepsi Americas*, 2003 SD 3, ¶ 13, 656

N.W.2d 323, 327; *Smith v. Hermsen*, 1997 SD 138 at ¶ 10, 572 N.W.2d at 838; *Hrachovec v. Kaarup*, 516 N.W.2d 309, 311 (S.D.1994). "We have recently noted that when deciding whether to grant relief from a default judgment under SDCL 15–6–60(b), courts must 'preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done *in light of all the facts.*'" *Upper Plains*, 2003 SD 3 at ¶ 16; 656 N.W.2d at 328 (quoting *Colton Lumber Co. v. Siemonsma*, 2002 SD 116, ¶ 10, 651 N.W.2d 871, 874). "The term excusable neglect has no fixed meaning and is to be interpreted liberally to insure that cases are heard on the merits." *Upper Plains*, 2003 SD 3 at ¶ 13, 656 N.W.2d at 327. "Excusable neglect must be neglect of a nature that would cause a reasonably prudent person under similar circumstances to act similarly." *Upper Plains*, 2003 SD 3 at ¶ 13, 656 N.W.2d at 327. The trial court should exercise its discretion to resolve doubt in favor of the defendant's request. *Roso v. Henning*, 1997 SD 82, ¶ 12, 566 N.W.2d 136, 141.

[¶ 15.] The trial court entered findings of fact and conclusions of law in support of the order setting aside the default judgment. The court's findings were based upon affidavits, exhibits and deposition testimony taken from the principle actors at United, Coleman and Generali. The trial court found that United made a prima facie showing of meritorious defenses. Action does not contest this determination on appeal. Rather, Action argues

---

2. 15–6–55(c) provides: "Setting aside default. For good cause shown the court may set aside a judgment by default in accordance with 15–6–60(b)."

15–6–60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect.

that the trial court erred in finding excusable neglect.

[¶ 16.] The trial court found that Generali was responsible for the defense of the lawsuit based upon the parties contractual relationship and in the normal course of the parties business. This finding is supported by the evidence and is not clearly erroneous. Consistent with established practice, United and Coleman each took immediate action to forward the lawsuit on to the proper company for handling this lawsuit. Based upon past experience, it was reasonable for United and Coleman to each believe that a timely defense would be made to this lawsuit.

[¶ 17.] Action claims that Generali was an undisclosed agent of United and that as such, Generali is absolutely liable to Action under the default judgment because the reinsurance relationship was never disclosed. *See, Cooper v. Hileman,* 88 S.D. 516, 222 N.W.2d 299, 302 (S.D.1974); *Robbins & Stearns Lumber Co. v. Thatcher,* 453 N.W.2d 613, 616 (S.D.1990). Action claims it was improper for this relationship to exist undisclosed to the insured. The concept of an undisclosed agent has no bearing on whether the default judgment should be set aside. Neither Action's knowledge of the relationship between United and Generali nor any ultimate liability of Generali is currently at issue before the Court. Rather, the question is whether the actions of United, Generali and Coleman, in the context of their relationships, create excusable neglect for United. The trial court properly heard and considered evidence on this question in determining whether to set aside the default judgment.

[¶ 18.] Action argues that United and Coleman should have confirmed that an answer was timely served. It is undisputed that United and Coleman failed to do so. However, there is no evidence that United and Coleman had done so in the past, or that either had previously encountered problems with the management or timely response to lawsuits. Although the trial court did not make a specific finding, it was not an abuse of discretion under this record for the trial court to conclude that any neglect by United and Coleman was excusable.

[¶ 19.] Action also argues that Generali's actions should not be considered excusable neglect, claiming that Generali could have taken action to prevent the default. Action points to the fact that Makowski reviewed the summons and complaint and contacted Coleman to obtain a copy of the Action's policy of insurance on October 11, 2001. The default judgment was not actually taken until November 9, 2001. The record is silent as to whether Makowski realized that an answer was already past due, or if he considered contacting Action's counsel to obtain an extension to answer. It was approximately one month later before Makowski assigned the file to an adjustor and nearly two weeks after the assignment before the adjustor contacted South Dakota counsel to defend the lawsuit.

[¶ 20.] The trial court found that Generali was *unable* to timely respond to the lawsuit because of the terrorist attacks. While the facts suggest that Generali may have been able take other steps to prevent a default, we do not believe this finding is clearly erroneous in the context of the extraordinary circumstances at Generali following September 11. Makowski and the other Generali employees were working under extremely difficult and unusual circumstances for months following the September 11 attacks.

[¶ 21.] We also note that United took immediate steps to set aside the default judgment by filing a motion approximately two weeks after the notice of default was

given. Under these circumstances there was no dilatory behavior that was likely to prejudice Action. *See Smith v. Hermsen,* 1997 SD 138 at ¶11, 572 N.W.2d at 838. On this record, we cannot conclude that the trial court abused its discretion in determining that excusable neglect existed.

## ISSUE TWO

[¶ 22.] **Did the trial court err in deferring its decision on Action's request for attorney's fees and costs after granting United's motion to set aside default?**

■ [¶ 23.] At the hearing on the motion to set aside default judgment, Action orally moved for sanctions against United in the form of attorney's fees and costs incurred by Action on the motion to set aside default judgment. Action submitted an affidavit for fees and costs in the amount of $21,019.60. The trial court entered an order deferring ruling on the motion until the conclusion of the case.

■ [¶ 24.] It is well established that an "appeal may not be taken from an order unless it is authorized under SDCL 15–26A–3." *Smith v. Tobin,* 311 N.W.2d 209, 210 (S.D.1981). "An attempted appeal from an order from which no appeal lies confers no jurisdiction on this court, except to dismiss." *Id.*

[¶ 25.] The order deferring ruling is not an appealable order or judgment under SDCL 15–26A–3.[3] The order is not a final judgment as it does not finally and completely adjudicate all issues of fact and law on the motion. *See Riede v. Phillips,* 277 N.W.2d 720, 722 (S.D.1979). Further, the order does not otherwise affect a substantial right as both parties' appeal rights are preserved pending a final ruling on the motion.

[¶ 26.] We affirm the trial court's order setting aside the default judgment and dismiss the balance of the appeal for lack of jurisdiction.

[¶ 27.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 28.] JENSEN, Circuit Judge, for SABERS, Justice, disqualified.

---

3. SDCL 15–26A–3 provides:
   Appeals to the Supreme Court from the circuit court may be taken as provided in this title from:
   (1) A judgment;
   (2) An order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken;
   (3) An order granting a new trial;
   (4) Any final order affecting a substantial right, made in special proceedings, or upon a summary application in an action after judgment;
   (5) An order which grants, refuses, continues, dissolves, or modifies any of the remedies of arrest and bail, claim and delivery, injunction, attachment, garnishment, receivership, or deposit in court;
   (6) Any other intermediate order made before trial, any appeal under this subdivision, however, being not a matter of right but of sound judicial discretion, and to be allowed by the Supreme Court in the manner provided by rules of such court only when the court considers that the ends of justice will be served by determination of the questions involved without awaiting the final determination of the action or proceeding; or
   (7) An order entered on a motion pursuant to 15–6–11.