#23896-a-CALDWELL, Circuit Judge
**2006 SD 85**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TIMOTHY R. JOHNS and
LEANN L. JOHNS,                                  Plaintiffs and Appellants,

     v.

BLACK HILLS POWER, INC.,
a South Dakota Corporation,                      Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE EUGENE L. MARTIN
Circuit Judge Retired

\* \* \* \*

DAVE L. CLAGGETT                           Attorney for plaintiffs
Spearfish, South Dakota                     and appellants.

GARY D. JENSEN of
Beardsley, Jensen & VonWald                 Attorneys for defendant
Rapid City, South Dakota                    and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 24, 2006

OPINION FILED 9/20/06

#23896

CALDWELL, Circuit Judge

[¶1.] Timothy and LeAnn Johns (Johns) appeal the circuit court's grant of summary judgment in favor of Black Hills Power, Inc. (BHP) on their claim of trespass or, in the alternative, inverse condemnation. We affirm.

FACTS AND PROCEDURE

[¶2.] On July 24, 1990, Johns purchased a residence located at 110 South Main Street, Lead, South Dakota. The property was purchased from Barbara E. Huebler (Huebler). BHP placed an anchor pole and guy wires on the northeast corner of Huebler's property in 1989. The anchor pole and guy wires provided support for pole No. 7 located on the opposite side of the street. The anchor pole and guy wires were on the property at the time of Johns' purchase. Johns became customers of BHP the day after the property was transferred to them. Johns' residence did not directly receive electrical service from pole No. 7. Its electrical service was provided by pole No. 50.

[¶3.] In the spring of 2004, BHP placed a wooden stake in Johns' yard for the proposed placement of additional guy wires. Johns objected to the placement and checked the public records to determine the extent of BHP's rights. A check of the records disclosed no license, easement or other writing granting BHP a right to occupy the property. Johns notified BHP by letter to either immediately remove the pole and guy wires or negotiate an easement if it wished to continue to use the property. BHP ultimately removed the anchor pole and guy wires in November 2004.

[¶4.] This action was originally commenced by Johns as a small claims action. BHP petitioned to transfer the case to circuit court. Johns alleged that BHP

has committed trespass, or, in the alternative, inverse condemnation.[1] BHP acknowledged that no easement or license had been filed with the register of deeds. BHP maintained that its tariff required the granting of rights of way as a condition of service. BHP asserted that even if a taking had occurred, Johns did not have standing to maintain an action. Further, it argued that Johns had constructive notice of the alleged taking when they purchased the property and, therefore, were estopped or waived any such claim. BHP moved for summary judgment which was granted by the circuit court. Johns appeal.

## STANDARD OF REVIEW

> Under our familiar standard of review in summary judgment cases, we decide only whether genuine issues of material fact exist and whether the law was correctly applied. If any legal basis exists to support the circuit court's ruling, we will affirm. Kobbeman v. Oleson, 1998 SD 20, ¶4, 574 NW2d 633, 635 (citing SDCL 15-6-56(c) (1966)); *see* De Smet Ins. Co. of South Dakota v. Gibson, 1996 SD 102, ¶5, 552 NW2d 98, 99. "With the material facts undisputed, our review is limited to determining whether the [circuit] court correctly applied the law." *Kobbeman*, 1998 SD 20, ¶4, 574 NW2d at 635.

Schulte v. Progressive Northern Ins. Co, 2005 SD 75, ¶5, 699 NW2d 437, 438.

## ANALYSIS AND DECISION

### ISSUE

[¶5.] **Whether the circuit court erred in granting summary judgment in favor of BHP.**

---

1. Johns initially sought damages in the amount of $8,000 in the small claims proceeding. After removal to circuit court, Johns claimed in their answers to BHP's interrogatories damages in the amount of $5 per day compounded daily for eighteen years at ten percent per annum, totaling $103,191.98.

*Tariff*

[¶6.]        SDCL 49-34A-10 provides:

> Pursuant to rules promulgated under chapter 1-26 by the Public Utilities Commission, every public utility shall file with the commission, within such time and in such form as the commission may designate, tariffs and schedules showing the terms and conditions of service and all rates established by the public utility and collected or enforced, or to be collected or enforced, within the jurisdiction of the commission. The public utility shall keep copies of such tariffs and schedules open to public inspection under such rules as the commission may promulgate. Schedules and tariffs approved by the commission have the force and effect of law.

Before the circuit court, BHP asserted that Section 310 of the Rules and Regulations Covering Electric Service (tariff) filed by BHP with the Public Utilities Commission (PUC) granted a right-of-way without compensation. Section 310 provides:

> Customer shall, without compensation, make or procure satisfactory conveyance to Company of right-of-way for Company's lines necessary and incidental to the furnishing of service to customer and for continuing or extending said lines over and across the property owned or controlled by customer. The Company shall not be liable for damages involving the power line when such damages result from actions of parties other than the Company.

[¶7.]        Johns argued that Section 310 is unconstitutional in as much as it provides for a taking without compensation. BHP argued that the tariff is a contract with its customers and is accepted by the customer when accepting electric service. BHP maintained that the anchor pole and guy wires were part of the distribution system which supplied electricity to Johns. BHP claimed that there was no constitutional issue when a correct understanding of the tariff was applied.

[¶8.]     The circuit court did not grant summary judgment on this basis and withheld a decision on the constitutionality issue because Johns had not given proper notice to the attorney general pursuant to SDCL 15-6-24(c).  Johns still have not provided the required notice and this Court declines to consider the constitutionality issue before the circuit court has an opportunity to fully consider it.  Boever v. South Dakota Bd. of Accountancy, 526 NW2d 747, 751 (SD 1995).

*Standing*

[¶9.]     The anchor pole and guy wires were placed on the property prior to Johns' purchase.  Johns' complaint alleged trespass or, in the alternative, inverse condemnation.  The circuit court concluded that the placing and maintaining of the pole on Johns' property was not a temporary or continuing trespass.  "If the invasion is deemed to be 'permanent,' there is but one cause of action, and the statute of limitation commences to run from the time the invasion began, or when it became known to the aggrieved party."  City of Sioux Falls v. Miller, 492 NW2d 116, 118 (SD 1992) (citations omitted).

[¶10.]     The following factors are considered in determining whether a nuisance or trespass is permanent:

> (1)     [I]s the source of the invasion physically permanent, *i.e.*, is it likely, in the nature of things to remain indefinitely?
>
> (2)     [I]s the source of the invasion the kind of thing an equity court would refuse to abate by injunction because of its value to the community or because of the relations between the parties?
>
> (3)     [W]hich party seeks the permanent or prospective measure of damages?

*Miller*, 492 NW2d at 119 (quoting Dan D. Dobbs, *Handbook on the Law of Remedies* § 5.4, at 338 (1973)).

> "First, a nuisance or trespass is usually not regarded as a permanent one unless it is physically permanent or likely to continue indefinitely." *Dobbs, supra.* Under the second part of the test, *Dobbs* mentions that there are two large classes of cases, in which courts will not order removal of the trespassing structure or cessation of the operation of a nuisance-causing activity. In one class the defendant has the power of eminent domain. In such cases, courts will not force the defendant to cease operation since the defendant could, after a formal condemnation, continue its operation. "In a case like this, then, the source of the nuisance or trespass is physically permanent, and also legally permanent, in the sense that courts will not require its removal." *Id.* at 340.

*Miller*, 492 NW2d at 119.

[¶11.] Despite the fact that BHP ultimately decided to replace the anchor pole and guy wires after a substantial financial subsidy from the City of Lead, the placement of the anchor pole and guy wires on Johns property was permanent or likely to continue indefinitely. Further, it is doubtful that a court would require BHP to remove them because BHP could have formally condemned the property to place the pole on the property. *See* SDCL 49-33-10. "'The clearest case of a permanent nuisance or trespass is the one where the offending structure or condition is maintained as a necessary part of the operation of a public utility.'" *Miller*, 492 NW2d at 119 (citation omitted).

[¶12.] This Court holds that the circuit court was correct as a matter of law in concluding that this was a permanent trespass. "[I]f a [trespass] is deemed permanent, there is only one unceasing invasion of the plaintiff's interests and only one cause of action. . . . The statute of limitations of the one cause of action must,

then, begin running from the time the invasion began, or from the time it became manifest." *Id.* (quoting *Dobbs, supra* at 343). Johns' action is really one for inverse condemnation or a taking because of the permanent nature of the trespass. *See Miller*, 492 NW2d at 120. "[I]t is a general rule of the law of eminent domain that any award goes to the owner at the time of the taking, and that the right to compensation is not passed to a subsequent purchaser." Palazzolo v. Rhode Island, 533 US 606, 628, 121 SCt 2448, 2463, 150 LEd2d 592 (2001). The anchor pole and guy wires at issue were placed on the property in 1989 prior to Johns' purchase on July 24, 1990. When Johns purchased the property, any diminution in value caused by the placement of the pole and wires presumably was reflected in the purchase price. Johns concede in their brief that if the trespass or taking is permanent, the cause of action would belong to the former owner. This Court affirms the circuit court's conclusion that any cause of action for inverse condemnation belongs to the prior owner and Johns lack standing to maintain an action for the taking.[2]

---

2.  Johns reliance on SDCL 15-6-17(a) as a bar to the granting of summary judgment is misplaced. The concepts of "real party in interest" and "standing to sue" are related, but distinct. *See* 6A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure §1542 (2004). "A party must be both the real party in interest and have standing." *Id.*

> In the realm of public law, when governmental action is attacked on the ground that it violates private rights or some constitutional principle, the question whether the challenger is a proper party plaintiff to assert the claim rarely is analyzed in terms of real party in interest or capacity principles. Instead, the courts have tended to rely on the judge made doctrine of standing to sue. To the extent that standing in this context is understood to mean that the litigant actually must be injured by the governmental action that he is assailing, then it closely resembles the notion of real party in interest under Rule 17(a), inasmuch as both terms are used to designate a

*Constructive Notice and Waiver*

[¶13.]     The circuit court also concluded that even if Johns had standing, summary judgment was proper based on constructive notice and waiver.  Because this Court concludes that Johns lack standing, it is not necessary to address this issue.

[¶14.]     We affirm the grant of summary judgment because Johns do not have standing.

[¶15.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶16.]     CALDWELL, Circuit Judge, for SABERS, Justice, disqualified.

---

plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits.  Thus, for example, the well-settled rule that a party ordinarily does not have standing to raise the constitutional rights of another person who is not joined in the suit may be thought of as merely a particular application of the real party in interest principle.

However, several other elements of the standing doctrine are clearly unrelated to the rather simple proposition set out in Rule 17(a), and plaintiff must both be the real party in interest and have standing.

*Id.*