#23907-a-SLZ

**2006 SD 101**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TIM BURCH AND LINDA BURCH,                    Plaintiffs and Appellees,

  v.

STANLEY BRICKER AND DIANA BRICKER,          Defendants and Appellants,

  and

BEN N. GARMAN AND LORI L. GARMAN,           Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN W. BASTIAN
Judge

* * * *

WESLEY W. BUCKMASTER
Buckmaster Law Offices, PC
Belle Fourche, South Dakota          Attorneys for plaintiffs
                     and appellees.


BRAD A. SCHREIBER
Schreiber Law Office
Belle Fourche, South Dakota

BROOKE K. STEELE
Belle Fourche, South Dakota          Attorneys for defendants
                     and appellants.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 28, 2006

OPINION FILED **11/15/06**

#23907

ZINTER, Justice

[¶1.]		Burchs leased cattle grazing land from Brickers.  Burchs claimed a rent reduction due to a drought.  The parties agreed that the lease authorized the reduction, but there was a dispute concerning the method of calculation.  Over a period of time, both sides filed a number of motions for partial summary judgment asking the circuit court to decide the issues piecemeal as a matter of law.  The circuit court granted summary judgments in favor of Burchs on the calculation and amount of the reduction.  The court denied summary judgments on Brickers' affirmative defenses of laches and unjust enrichment.  Brickers appeal.  We affirm.

## Facts and Procedural History

[¶2.]		Burchs leased the grazing land from Brickers from 1997 through 2000.  They entered into a second lease covering 2001 through 2006.  The annual rent was $40,000.  In 2004, Garmans purchased the land subject to the lease.  The purchase agreement required Brickers to indemnify Garmans for some of Burchs' claims.  Both Brickers and Garmans are hereinafter referred to as "Brickers," unless the context requires separate identification.

[¶3.]		The two provisions of the lease relating to rent reduction provided:

> §VIII:  It is agreed to by and between the parties that the leased premises has a carrying capacity of 300 cow/calf pairs.

> §IV:  . . ., should any of the leased premises be damaged or destroyed by any casualty of weather, fire or event not caused by the negligent or intentional conduct of Lessees, rent shall be adjusted according to the acreage damaged or destroyed for that year.

[¶4.]		Burchs sued for a rent reduction under these provisions.  Bricker admitted that §IV allowed a rent adjustment for damage due to drought, but

-1-

objected to the consideration of cattle "carrying capacity" under §VIII in measuring the reduction. The circuit court granted Burchs' motion for summary judgment allowing a rent reduction measured by the loss of forage and the resulting loss of carrying capacity of the property. The circuit court denied Brickers' defensive motions for summary judgment asserting laches and unjust enrichment. The circuit court ultimately granted Burchs judgment in the amount of $80,212.00 plus interest. Brickers raise four issues on appeal. We restate them as follows:

## Issues

1. Whether the circuit court erred as a matter of law in its method of calculating the rent reduction.

2. Whether the circuit court erred in disallowing the defense of laches.

3. Whether the circuit court erred in disallowing the defense of unjust enrichment.

4. Whether there was a material issue of disputed fact concerning offsets that precluded summary judgment.

## Standard of Review

[¶5.]     In reviewing a motion for summary judgment:

> [We] must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. . . . The evidence must be viewed most favorably to the non-moving party. . . . The non-moving party, however, must present specific facts that a genuine, material issue for trial exists.

Garret v. Bank West, Inc., 459 NW2d 833, 836-837 (SD 1990) (citations omitted).

## Decision

### 1) *Method of Calculating the Rent Reduction*

[¶6.]        Burchs' calculation of rent reduction, accepted by the circuit court, was premised on §VIII's language indicating that this grazing lease contemplated a "carrying capacity of 300 cow/calf pairs." Undisputed expert testimony established that "carrying capacity is the amount of head of livestock that can harvest the forage on a given piece of real estate without doing damage to either plant density or the condition of the property." Because the drought reduced the forage and resulting carrying capacity of the land, the rent reduction was calculated on the reduced number of cows/calf pairs, known as animal units (AUs),[1] that could graze the premises during the drought. Ultimately, the percentage of reduced AUs was used to reduce the rent proportionately.

[¶7.]        Based on this methodology, there was a 46.65% loss of carrying capacity in 2001, a 62.68% loss in 2002, and a 53.87% loss in 2003. A similar method was apparently used in 2004. The annual rent was reduced by these

---

1.    The expert defined an AU as: "[a]n animal unit . . . it's the animal . . . . [it] is defined as a thousand-pound cow with or without a calf up to six months old."

The expert defined an AUM and carrying capacity as:

> [t]he amount of forage it takes to sustain one AU for a month . . . Essentially, the forage production is expressed as AUMs. And once you have that number, you can divide it by 12 to estimate the total carrying capacity or the total number of head that that amount of forage will sustain.

percentages to calculate the rent reduction for each year. The $80,212.00 judgment awarded to Burchs is the rounded sum of these reductions.

[¶8.]　　　　On appeal, Brickers' principal argument is that the lost carrying capacity methodology was an improper basis for calculating the reduction. They claim that §IV required that the reduction be calculated on some formula that measured the specific number of *acres* that were unavailable because of drought.

[¶9.]　　　　Although Brickers also argue that summary judgment was precluded by material issues of disputed fact, they concede that this issue is really a question of law. Brickers have identified no fact in dispute with respect to the circuit court's calculations. Brickers' brief also unequivocally states: "The lower court erred as a matter of law in interpreting the contract to require that damages be calculated based on 'carrying capacity.' For this reason, the trial court must be reversed on this issue." Therefore, there are no material issues of disputed fact that preclude summary judgment on the method of calculating the reduction.

[¶10.]　　　　As Brickers concede, the rent reduction methodology involves an interpretation of the contract. Interpretation of a contract is a question of law, which we review de novo. *See* A-G-E Corporation v. State, 2006 SD 66, ¶15, 719 NW2d 780, 786. The calculation of damages under the lease is analogous to the calculation of damages generally. "'Proof of damages requires a reasonable relationship between the method used to calculate damages and the amount claimed.'" Bunkers v. Jacobson, 2002 SD 135, ¶40, 653 NW2d 732, 743 (quoting McKie v. Huntley, 2000 SD 160, ¶18, 620 NW2d 599, 603 (citation omitted)). "In applying this rule, a reasonable certainty test is employed. 'Reasonable certainty

requires proof of a rational basis for measuring loss,' without allowing any room for speculation." *Id.* (citations omitted).

[¶11.]     In this case, the circuit court's methodology identified the loss of forage and resulting loss of carrying capacity and compared that loss to the carrying capacity contemplated in a normal year. Based on the lease's express provision specifying a carrying capacity of 300 cow/calf pairs in a normal year, there was a reasonable relationship between the method utilized and the rent reduction claimed. Moreover, the method was precise and easily calculable.

[¶12.]     Brickers essentially concede the point. Their brief acknowledges that there is more than one reasonable basis on which to calculate this type of loss:

> There are at least two alternative methods for calculating the alleged loss. As previously stated herein the preferred method . . . is a determination of the lost acreage due to drought. . . . The second preferred method would be to utilize a method of calculation which has generally been accepted for calculating such losses.

The circuit court's methodology was generally accepted in the agricultural community. Brickers raise no dispute of fact on this point. Expert testimony indicated that: "Well, we do this in the normal course of our business. Any time we appraise a ranch, we evaluate the forage production. We convert that to animal units and it becomes a part of our value estimates. One of the three approaches we look at when we estimate value. . . ."[2] The circuit court's methodology was also

---

2.     There is also statutory support for carrying capacity as a measurement. SDCL 10-6-33.1(1) enumerates the "'capacity of the land to produce agricultural products. . . as one factor to be considered in determining value of agricultural land." SDCL 10-6-33.2 further provides: "The capacity of

(continued . . .)

consistent with the federal government's measurement of relief for drought losses. Burch testified that when drought relief was computed, "[i]t was based on my animal units."

[¶13.] Ultimately, Brickers simply "prefer" an "alternative" method of calculation. However, they failed to demonstrate that, as a matter of law, the loss of forage and carrying capacity method was an irrational basis on which to calculate the loss. After all, this was a grazing lease and there was no evidence that the drought only damaged a certain number of the acres leased. Furthermore, Stanley Bricker's own testimony refutes his claim that the reduction may only be measured by "the number of acres lost due to drought," and that the carrying capacity was only a "size determination" of the property. When asked to explain what "size determination" meant, if it was different than carrying capacity, Bricker replied "I don't know that I can."[3]

[¶14.] Brickers finally claim that the circuit court's method of calculating the reduction was unreasonable because it was based on the annual rent and "if the lease price was [increased], then the alleged loss would go up." Brickers contend that such a methodology would not be based on Burchs' actual loss because it would be based on the cost of the lease rather than the number of damaged or destroyed

---

(. . . continued)
agricultural land to produce agricultural products shall be based on . . . the average acres per animal unit for grazing land."

3. Brickers claim that Burchs' complaint is inconsistent by requesting damages for "loss of leased acreage due to drought," but calculating damages based on carrying capacity. Because Stanley Bricker was unable to explain any relevant difference between the two, this claim is without merit.

acres. We find this argument unavailing. A higher lease price is indicative of more productive land. If Burchs had paid higher rent for more productive land, logic and economics dictate that they would have suffered a greater loss.

*2) Laches*

[¶15.]    To support a determination that the affirmative defense of laches bars Burchs' action:

> [It] must be found that, (1) [Burchs] had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, [Burchs] engaged in an unreasonable delay before commencing this suit, *and* (3) that allowing [Burchs] to maintain the action would prejudice [Brickers].

Brookside Townhouse Ass'n v. Clarin, 2004 SD 79, ¶32, 682 NW2d 762, 771. However, "[l]aches does not depend upon passage of time alone; plaintiff must be chargeable with lack of diligence in failing to proceed more promptly." Conway v. Conway, 487 NW2d 21, 25 (SD 1992) (citing Golden v. Oahe Enterprises, Inc., 90 SD 263, 277-278, 240 NW2d 102, 110 (1976)). *See also* F.D.I.C. v. Nordbrock, 102 F3d 335, 340 (8thCir 1996) (affirming a summary judgment denying the defense of laches); Brown-Mitchell v. Kansas City Power & Light Co., 267 F3d 825, 827 (8thCir 2001) (affirming a summary judgment granting the defense of laches). Thus, "'mere delay, short of the statute of limitations, will not estop a party from asserting his right. . . , unless he has been guilty of some act, declaration, or statement that has, in some manner, misled the other party to his prejudice.'" City of Sioux Falls v. Miller, 492 NW2d 116, 120 (SD 1992) (quoting Faulk v. Missouri River and N.W. Ry. Co., 28 SD 1, 12, 132 NW 233, 237 (1911)).

[¶16.]     Brickers claim they were misled because Burchs were not diligent in bringing this suit and there is no evidence that a formal rent adjustment was requested during the years 1998-2002.  Brickers claim prejudice because they cannot now view the condition of the land as it existed, or observe the number of cattle that were actually able to graze the premises during the drought years.  They argue that Burchs' delay in bringing this suit kept them from reasonably evaluating the loss actually suffered.

[¶17.]     However, there is no evidence that Burchs acted without due diligence in bringing this suit.  Although Brickers claim that Burchs failed to promptly assert this claim, there is no dispute that Brickers lived on this property during the time in question.  Therefore, they were in the same position as Burchs to view the effect of the drought on the available forage and number of cattle that the land could sustain.  As the circuit court observed: "the [Brickers] had the same opportunity as the [Burchs] to record the drought conditions that existed during the lease."  For these reasons, and because there is no dispute that rent adjustments were at least informally discussed as early as 2001, Brickers' defense of laches was insufficient as a matter of law.[4]

---

4.     Burchs also contend that Brickers' Notice of Appeal was not timely filed on this issue and on the issue of unjust enrichment.  However, denial of a motion for summary judgment is generally not considered a final judgment when "it does not finally and completely adjudicate all issues of facts and law on the motion."  Action Carrier, Inc. v. United Nat. Ins. Co., 2005 SD 57, ¶25, 697 NW2d 387, 393 (citation omitted).  Because these rulings were denials of motions for partial summary judgment, they were not appealable under SDCL 15-26A-3.  *Id*. ¶24.  Instead, they were reviewable on appeal of the final judgment.

### 3) Unjust Enrichment

[¶18.]    Brickers contend that Burchs were unjustly enriched through a rent reduction together with the circuit court's failure to grant an offset for Burchs' federal government Non-Insured Crop Assistance Program (NAP) drought relief payments.  That contention is without merit.  "Quantum meruit is still used today as an equitable remedy to provide restitution for unjust enrichment."  Black's Law Dictionary 1255 (7thed 1999).  However, this remedy is unavailable when the rights of the parties are fixed by the terms of a written contract:  in this case, the lease.

> [Q]uantum meruit does not provide a basis for recovery when a valid express contract exists between the parties, fixing the rights of each.  There is no question but what, where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or [claim] on quantum meruit.

Mooney's, Inc. v. South Dakota Dept. of Transp., 482 NW2d 43, 47 (SD 1992) (quoting Thurston v. Cedric Sanders Co., 80 SD 426, 125 NW2d 496, 498 (1963).  Because this lease contained an express provision for calculating the rent reduction, the theory of unjust enrichment provides no basis for additional adjustments.[5]

### 3)  Offset of Damages

[¶19.]    Brickers claimed three offsets.  However, the first claimed offset for the NAP payments is unavailable because, as discussed above, the claim for unjust

---

5.    Brickers also fail to acknowledge Burchs' retroactive ineligibility for the NAP payments.  Brickers offered a letter from the County Director of the Farm Service Agency, stating that if Burchs did not carry the full risk of loss on the grazing land involved, their eligibility for the NAP payments must be reevaluated.  Brickers have not identified a material issue of disputed fact concerning the contents of this letter.

enrichment fails. The second claim (a $5,000 reduction previously paid) was conceded by Burchs and does not require our consideration.[6] The third is based on the rent reduction for 2004, which was $14,931.84. This reduction related to the period of time after Garmans had purchased the property. Brickers argue that the 2004 reduction should be subtracted from the judgment against them and awarded against Garmans.

[¶20.] However, Brickers cite no authority other than a reference to Burch's Third Amended Complaint. That complaint asked for the entire amount from the Brickers, or *in the alternative,* for the 2004 amount from Garmans. This reference is not authority *requiring* separate judgments. "'The failure to cite supporting authority is a violation of SDCL 15-26A-60(6) and [this] issue is. . . .waived.'" Chapman v. Chapman, 2006 SD 36, ¶31, 713 NW2d 572, 580 (quoting State v. Pellegrino, 1998 SD 39, ¶22, 577 NW2d 590, 599) (citations omitted).

[¶21.] Even if we were to reach the issue, however, the circuit court did not abuse its discretion. The 2004 loss involves an indemnity claim between Brickers and Garmans, and that claim is controlled by their indemnity agreement. Because Burchs are not a party to that agreement, we see no abuse of discretion in not involving them in a dispute between the landlords.

[¶22.] Affirmed.

---

6. Brickers paid Burchs a $5,000 reduction, which Burchs acknowledge. The amount was not subtracted from the judgment through inadvertence. Burchs agreed to file a partial satisfaction of judgment in that amount, and it appears that the satisfaction has been filed.

#23907

[¶23.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.